## Case No. 6,961.

### HUTTON v. SCHELL.

[6 Blatchf. 48;[1] 7 Int. Rev. Rec. 84.]

Circuit Court, S. D. New York. March 3, 1868.

CUSTOMS DUTIES — DUTIABLE VALUE — INLAND TRANSPORTATION—COMMISSIONS—DECISION OF COLLECTOR.

1. There is nothing in the act of March 3d, 1851 (9 Stat. 629), which justifies a collector of customs in requiring an importer of foreign merchandise to add to his invoice, as forming part of the dutiable value of such merchandise, charges for inland or coastwise transportation, whether by land or water, of such merchandise, from the place of its production or manufacture to another place, before it leaves its foreign port of shipment, for the United States.

2. A charge for commissions, at "the usual rates," forms part of such dutiable value. This charge must be made, whether the importer has paid any commissions or not; and a charge for commissions at a rate higher than the usual rate, cannot be made, even though the importer has paid a higher rate.

[Cited in Moke v. Barney, Case No. 9,698.]

3. The charge for "costs and charges" must include those actually paid, and nothing more, and it is not lawful to insert an arbitrary estimate.

4. Under the act of March 3d, 1857 (11 Stat. 192), a valid prospective protest against the payment of duties, made on a particular importation of merchandise, and expressing the intention of the importer that the protest shall apply to all future similar importations made by him, is valid as to subsequent importations of similar merchandise on which like duties are exacted.

[Cited in Wetter v. Schell, Case No. 17,470; Ullman v. Murphy, Id. 14,325; Davies v. Miller, 130 U. S. 287, 9 Sup. Ct. 561; Schell's Ex'rs v. Fauché, 138 U. S. 571, 11 Sup. Ct. 380.]

5. A protest against paying duties on costs and charges, because the goods were invoiced "free on board," is insufficient, unless the words "free on board" are found in the invoice.

6. A protest against paying duties on 2½ per cent. commission, because no commission was paid, is insufficient, it being immaterial whether any commission was paid or not.

7. Under the provision of the 5th section of the said act of March 3d, 1857, which declares that the decision of the collector, unless appealed from, shall be final and conclusive as to the liability of goods to duty or their exemption therefrom, it is not necessary that the importer should appeal from the decision of the collector requiring the addition to the invoice of illegal charges for inland freight, and commissions, and costs and charges, in order to prevent such decision from being final.

This was an action [by Benjamin H. Hutton, survivor] against [Augustus Schell] the collector of the port of New York, to recover back duties paid under protest, and which were alleged by the plaintiffs to have been illegally exacted by the defendant, on sundry importations of goods from Europe. It now came up for a second trial, having been once tried in December, 1866. On the first trial, all the questions now raised were passed upon by the court, except the question as to the construction and application of some of the protests. A verdict was

rendered for the plaintiffs, and a reference was ordered to adjust the amount of the recovery. The adjustment was made, the report of the referee was filed, exceptions to such report were taken, and, after a hearing thereon, judgment was entered for the plaintiffs. The defendant excepted to various rulings made by the court at the trial and on the exceptions to the report of the referee. When the case was in readiness to be taken to the supreme court, by the defendant, by writ of error, the parties agreed to set aside all the proceedings, and that a new trial should be had. It now took place before Judge SMALLEY and a jury.

E. Delafield Smith, for plaintiff.

Samuel G. Courtney, Dist. Atty., and Simon Towle, for defendant.

SMALLEY, District Judge (charging jury). This case depends, almost exclusively, upon legal questions. It is, virtually, an action against the government. No execution can issue against the collector, unless, in the opinion of the court, he acted in bad faith, or, in the language of the law, "without probable cause." Against any errors of judgment, or erroneous constructions of law, the collector, as the law now stands, is protected.

The plaintiffs claim, in substance, that, commencing in July, 1857, and continuing through a period of years, until 1861, during nearly the entire time while the defendant held the office of collector of the port of New York, they were in the habit of importing merchandise from various places on the continent of Europe; that, when they presented their invoice and their entry, at the custom house, to the entry clerk, whose duty it was to superintend and take charge of that branch of the business, they were told that they must add certain specific items; that, in some cases, they were told they must add a larger amount for commissions than they admitted they were liable to pay—a larger amount than that which they say was the "usual rate" under the law; that they were compelled, also, to add certain fixed and arbitrary sums for inland transportation, and port charges, and other costs of various kinds; that, when they remonstrated with the officers against doing so, they were informed that, unless they made these additions, the entry would not be received; and that, in consequence of this, and for the purpose of obtaining possession of their goods, they made the entries as required, protesting against the payment of extra charges for commissions, and for other items. The plaintiffs claim, that their evidence tends to prove, (1.) That, in some cases, they paid no freight or charges of any kind, and that the goods were "free on board;" (2.) That, in other cases, they were compelled to add an arbitrary sum for costs and charges—more than the amount

.paid by them, although they paid something; (3.) That they were compellel to add to their invoices, internal freight; (4.) That they were compelled to pay duties on an extra charge for commissions, above the usual rate of commissions in the markets in which the goods were purchased; and, (5.) That they duly protested against these exactions, and only submitted to them for the purpose of obtaining possession of their goods. The defendant resists the recovery, on the ground that inland freight was properly added to the invoice, under the act of March 3d, 1851 (9 Stat. 629), and that the other costs and charges were proper and legal, under the treasury instructions and the law.

The question as to inland freight has been a good deal discussed, and there has, undoubtedly, been some diversity of opinion in regard to it. On the 1st of February, 1856, Mr. Guthrie, then secretary of the treasury, issued treasury regulations to collectors of the customs, in which he says: "Freight or transportation from the foreign port of shipment to the port of importation, is not a dutiable charge. In cases, therefore, of goods arriving in the United States, after having been first transported from the place of their production or manufacture to another port or place, whether in the same or another country, by land or by water, and thence transhipped for the United States, provided satisfactory evidence be adduced to the collector of customs at the port where the goods shall arrive, that they were originally shipped with the bona fide intention of having them transported to a port in the United States, as their final port of destination, no dutiable costs or charges will have accrued, either on the transportation from the first to the intermediate port, or while remaining in or leaving the latter, the voyage or transportation being regarded as continuous from the country whence originally exported in good faith, on a declared destination for a port and parties in the United States." This construction was thus early given to this act by the treasury department.

The question came before the circuit court in California, in Gibb v. Washington [Case No. 5,380], in July, 1858. The court consisted of Judges McAllister and Hoffman, and the opinion was that of the full bench. The question was carefully considered, and the court says, that charges for the transportation of goods from the interior of the country, by railroad or water carriage, incurred prior to the time of exportation, cannot be added to the value of the goods, to be ascertained in the manner prescribed by the act of March 3d, 1851.

The same question was raised in this court, at the April term, 1860, in Strange v. Redfield [Case No. 13,524], and a series of other cases, in all of which the plaintiffs recovered. A question was raised in those cases, as to the sufficiency of the protests, which was argued at the October term, 1860, but the court decided them to be sufficient, and the judgments were paid.

A treasury circular was issued on the 21st of May, 1863, while the present chief justice of the United States was secretary of the treasury, reaffirming the principle laid down in the treasury regulations of 1856, and in accordance with the decisions of the court in Gibb v. Washington [supra].

It is, undoubtedly, true, that the action of the treasury department has not been uniform upon this subject. It appears that, in some cases, both coastwise and inland freights have, by order of the treasury department, been added, to make dutiable value. The courts, however, as soon as the question was brought before them, decided that coastwise freight was not dutiable; and I think that the correctness of that decision has never been questioned, except upon this trial, and has been invariably acquiesced in by the treasury department. It appears that different secretaries have, at different times, ordered duties to be refunded, that were paid on charges for freight from Nantes to Paris, from Manchester and Glasgow to Liverpool, and from Buenos Ayres, via Montevideo, to New York. This last question was decided by Mr. Justice Nelson and Judge Betts in Wilbur v. Lawrence [Case No. 17,635].

But, it is claimed that there is a difference between inland freight and water freight. No reason has been assigned for any such distinction, and I cannot conceive of any. It must be purely arbitrary. Why should duty be charged on goods sent by rail from Nantes to Havre, when it cannot be if they are sent down the Loire? And what difference does it make whether goods are forwarded from Glasgow to Liverpool, for New York, by rail or down the Clyde? I think that there is nothing in the act of March 3d, 1851, nor any sound reason, to warrant any such distinction. The policy of the tariff acts is, to equalize the duties on goods of similar descriptions; and, to interpolate this arbitrary distinction into the law would, in many cases, defeat that object. The present secretary of the treasury, in his circular of April 16th, 1867, abolishes all distinction between inland land and water carriage, as to charges for freight on merchandise imported from the adjoining British provinces into the United States, which shows that he, too, regards this arbitrary distinction as unfounded and unjust. I am satisfied, therefore, that the charges added for inland freight were made in violation of law, and ought to be refunded.

Then, as to commissions. The statute requires the charge to be of "the usual rates." This term has received a judicial construction. If it had not, it would seem to be very difficult for lawyers to differ upon the subject. There seems to be room for

but one opinion. It is not what the importer may have paid as commissions. He may have procured his goods without paying any commissions; but he will still be liable for a charge for commissions, and must pay the duty upon it. On the other hand, he may have paid much more than the usual rate of commissions. But he is not bound to pay duty on more than the usual rate, because that is the sum fixed by law. What the usual rate is, is a question of fact.

The costs and charges· actually paid, if not included in the invoice, should undoubtedly be added. The officers of the customs have no more right than the merchant has to make an arbitrary estimate, for the purpose of convenience. The merchant is bound to enter the costs and charges, as they were paid. If none were paid, if the goods were delivered "free on board," then, as has been repeatedly held in this court, the importer is not liable for any, for the reason that these charges entered into, and constituted a part of, the. market value of the goods. This point has been repeatedly decided by Mr. Justice Nelson, the presiding judge of this court, and by Judges Betts, Hall, Ingersoll, and Shipman, and by myself.

Therefore, so far as this class of cases is concerned, whenever it appears, upon examination, that inland freight has been added to the invoice, or that the plaintiff has been compelled to pay duties on extra commissions, or that costs and charges have been added to a larger amount than have been paid, it follows that the duties exacted upon such additions were illegally exacted, and ought to be refunded.

The second objection taken by the defendant is, that there were no protests sufficient to entitle the plaintiff to recover in this case. The act of February 26th, 1845 (5 Stat. 727), required the protest to be made at or before the payment of the duties. The act of March 3d, 1857 (11 Stat. 195), under which these entries were made, changes the expression, "protest," but uses language very similar, and says that the act must be done within ten days after the entry of the goods. The language of the act of March 3d, 1857, as to what the protest must contain, is precisely like the language of the act of February 26th, 1845, the later act being, probably, copied from the earlier one, and provides that the protest shall set forth, distinctly and specifically, the grounds of objection to the payment of the duties, so that the collector may know the reason of the protest.

But, it is objected that, in some of these cases, there were no protests filed at the time, or even within the ten days. It is conceded, however, that there had been previous protests filed, which claimed to be prospective and continuous, and which the merchants intended to be so. In these protests they say: "You are hereby notified that we desire and intend this protest to apply to all future similar importations made by us."

The question of prospective protests has undergone a good deal of discussion in the courts; but it seems to be now well settled, so far, at least, as this circuit is concerned. The first time that this question arose, whether a protest of this kind, a prospective or continuous protest, was valid as to subsequent importations, was in the circuit court for the district of Maryland, before Chief Justice Taney, in the case of Brune v. Marriott [Case No. 2,052], which appears to have been tried in April, 1849. The question was discussed before the chief justice by a very able lawyer, Mr. Reverdy Johnson, who maintained that the protest was invalid and insufficient. But the chief justice, after examining the question, decided that the protest was clearly sufficient, and said that there was nothing in the letter of the law, or in its reason or spirit, which required a protest to be attached to every particular entry that was made. That case of Brune v. Marriott went up, by writ of error, to the supreme court of the United States, and was there decided at the December term, 1849. It is reported as Marriott v. Brune, in 9 How. [50 U. S.] 619. The question was again pressed upon the supreme court, by Mr. Reverdy Johnson, with his usual ability, as the report of the case will show. Mr. Justice Woodbury delivered the opinion of the court, sustaining the opinion of the chief justice, and saying that the protest must be held to be valid. So far as appears from the report, this was the unanimous opinion of the supreme court. This was in May, 1850.

The question came up before Mr. Justice Nelson and Judge Betts, in this court, in November, 1855, in the case of Steegman v. Maxwell [Case No. 13,344]. In the opinion, which was given by Judge Betts, but was the. opinion of the full bench, the case of Marriott v. Brune [supra] is referred to, and the principle is established, that a prospective protest of this kind is sufficient to entitle the merchant to recover back duties illegally exacted from him. This ruling has been followed, in this court, in very many instances, among which is the recent case of Fowler v. Redfield [Case No. 5,003], which is not reported, but was decided by Mr. Justice Nelson, as lately as December, 1862; and this view seems to have been regarded as the settled rule in this court. Certainly, I have so understood it myself, in disposing of this class of cases; and it must be regarded as settled in this circuit, if not throughout the United States.

I am at loss myself to conceive how a distinction can be drawn between this class of prospective protests, and the protest that was made in the case of Brune v. Marriott [supra]; for, clearly, the protest in this case is quite as distinct and specific as the pro-

test in that case, if not more so, when we compare them.

Another suggestion may, and perhaps ought to, be made. All the protests in the cases referred to, were made under the act of February 26th, 1845, the language of which, as we have already seen, is adopted in the act of March 3d, 1857, to describe the character of the protest and the circumstances under which it may be made. The act of 1857 does not use the word "protest," but uses another phrase. The protests in the cases referred to, having been made prior to the passage of the act of 1857, it is hardly to be supposed that the eminent lawyers in both branches of congress, when they adopted, in the act of 1857, the language of the act of 1845, did not know what construction the courts had given to that language. It cannot be, that the supreme court decided this question in 1850, and that this legislation took place six years afterward, in ignorance of such decision. If it had been the design of congress to change the construction which the government and the courts had given to the language used in the act of 1845, it is very natural to suppose that they would have used different language, in the act of 1857, in order to indicate such design.

There is but one case, so far as I am aware, in which the decision in Marriott v. Brune has been criticised; and that is the case of Warren v. Peaslee [Case No. 17,198], where Mr. Justice Curtis, in the circuit court for the district of Massachusetts, ruled that the protest was insufficient. He attempted to draw a distinction between the case of Marriott v. Brune and the case before him. I must confess, however, that it seems to me to be a distinction without a difference. The principle in each appears to be precisely the same.

But, if there were no judicial decisions upon the subject, the same result would be reached by reasoning. What is the object of the legislation providing for a protest? It is, that the collector shall be advised, distinctly and specifically, what it is which the merchant insists he ought not to pay, and what it is against which, as an illegal exaction, he protests, and what it is for which he intends to hold the collector responsible, under the law. Why is it necessary to repeat the protest? This case furnishes a very fair illustration. Here is a merchant, making some five hundred entries in this port, of precisely the same character, at least one every week in the year, and perhaps more. What sound reason is there for compelling him to go through the formula of saying, in each one of these cases, "I protest," when he has told the collector, in the first case, that he protests against that and against all similar exactions? I am at a loss to see that any good purpose would be answered by adopting such a construction.

The protest must set forth distinctly, specifically and truly, the objection to the payment of the duty, so that the collector may know what the merchant claims, and why he makes the claim. In some of the protests, in this case, the protest is against paying duties on costs and charges, because the goods were invoiced "free on board," when, by examining the invoice, it appears that the words "free on board" are not there. Such a protest is insufficient, because the invoice shows that the statement made in it is untrue, although it might have been good, if it had merely said, "free on board," omitting the word "invoiced." Others of the protests are against paying duties on two and one-half per cent. commission, because no commission was paid. That is insufficient, because it is immaterial whether any commission was paid or not. The duty was payable on the usual rate of commission. All such claims, therefore, the adjuster will disallow.

In relation to inland freight, it is immaterial whether the invoice shows that the goods were "free on board" or not; for, as we have already seen, inland freight was no more dutiable than coastwise or ocean freight.

The third objection made to the recovery in this case is, that no appeal was taken to the secretary of the treasury, under the 5th section of the act of March 3d, 1857. In giving a construction to that act, it is perhaps well and wise to consider the purpose of it. That it is a severe act, one that was intended to, and does, limit and restrict the common law and equitable rights of the merchant, all must agree. It is a well-settled rule of construction, in all courts, that acts of this description shall be construed strictly, and that they shall not be extended any further than the language of the law requires, where they restrict or limit the common law or equitable rights of any individual. They must, however, be enforced, so far as the language of the law requires. The language of this act, so far as this question is concerned, when it says that the decision of the collector shall be final and conclusive, unless it is appealed from under certain conditions afterward prescribed, is, that the decision of the collector shall be final and conclusive, "as to their liability to duty or exemption therefrom." What is "their liability to duty or exemption therefrom?" The question here is not, whether the language of the act necessarily implies that the decision of the collector shall be final, when he decides whether a certain article is liable to duty, or, if liable, at what rate of duty—five, ten, or fifteen per cent. The question here is not, whether this property was liable to duty. It is conceded that it was. The question is not, what the rate of duty shall be—whether any of this property shall pay one rate or another. It is admitted to be liable to duty, and the rate is

conceded. The merchant and the collector agree upon that. The collector claims, however, that certain charges should be added. This the merchant denies. Now, does it necessarily follow, from the reading of the language of the statute, construed as I have already stated it should be, that the decision of the collector shall be final upon that question [because it is an act which limits and restricts the rights of the merchants very materially from what would be their common law and equitable rights?] [2] Such would be my construction, even without authority; but I am gratified to find that I have been anticipated in this by a decision of the treasury department itself, having charge of these questions. It seems to have been the decision of Secretary Cobb, upon this precise question, in instructions to custom-house officers throughout the country, given December 20th, 1859, and April 7th, 1860, that, in such cases, the rule requiring an appeal did not apply, and that it was unnecessary to take it. Secretary Chase, on the 9th of June, 1862, took the same view, and, in a very full letter, says, that no appeal is required. This was in relation to this particular class of cases —costs and charges. It also appears, from various pieces of evidence, that these constructions of Secretary Cobb and Secretary Chase have been acted upon by the treasury department, in a great variety of instances. Thousands of dollars have been refunded, which would not have been refunded, if this 5th section of the act of March 3d, 1857, had been understood to be applicable to this class of cases. It appears that, on the 30th of March, 1865, Secretary McCulloch repudiated this construction. But, even in that case, he reconsidered his ruling, and ordered judgments that had been recovered without an appeal to be paid. So that it can hardly be considered that there was a revocation of the previous action of the department. I hold, therefore, that the objection cannot be sustained, and that there is no bar to a recovery in this class of cases, to be found in the 5th section of the act of March 3d, 1857.

On the former trial, three additional objections were made to the plaintiffs' right to recover. It was claimed, (1.) That the payments were voluntary, and that, therefore, they were not entitled to recover; (2.) That the action of the appraisers was conclusive, and the plaintiffs could not go behind it; (3.) That the illegal exactions, if any were made, were made by the defendant's subordinates in the custom house, and that he, as collector, was not liable for them. These objections are, at this time, all abandoned; and it is conceded that they constitute no defence.

There is a single question of fact, which I will now submit to the jury. What was

the usual rate of commission, in Great Britain, between the 1st of July, 1857, and the 1st of January, 1861—the time embraced in these entries? What was it in continental Europe, outside of Paris, and what was it in Paris? These questions the jury will answer by their verdict.

[An action for excessive duties, under the act of 1857 (11 Stat. 192), was tried in Case No. 6,962, and a verdict rendered for plaintiffs.]