UNITED STATES *v.* HEFFERNAN PAPER CO. (No. 2634)[1]

APPRAISEMENT—FOREIGN VALUE, SECTION 402 (b), TARIFF ACT OF 1922— INLAND FREIGHT.

Where merchandise reaching this country from Hamburg was sent there from Berlin, the allowance by the general appraiser and the Board of United States General Appraisers of the freight from Berlin to Hamburg as a deduction from the invoice value to make foreign value under section 402 (b), Tariff Act of 1922, is equivalent to finding that Berlin was one of the principal markets for such goods in Germany, and Hamburg was not.   Since it appears that the price was the same delivered in Berlin, Hamburg, or Wismar, the inland freight was part of the market value of the goods and not allowable.

United States Court of Customs Appeals, March 13, 1926

APPEAL from Board of United States General Appraisers, Reap. Circ. 35677

[Reversed and remanded.]

*William L. Wemple* for appellant.

*William W. Hoppin* (*Peter A. Abeles,* special attorney, of counsel), for the United States.

[Oral argument October 29, 1925, by Mr. Wemple and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

James P. Heffernan Paper Co. imported at New York September 4, 1924, 103 bales of brown sulphite Kraft wrapping paper weighing 42,294 pounds.   The paper was ordered from Coseler Cellulose und Papier-fabriken Aktiengesellschaft by letter, and was shipped from the factory of said manufacturer at Berlin, Germany, to importer, via Hamburg.   When the importer entered the goods, he did so at the invoice price, deducting therefrom, to fix what he claimed to be dutiable value, charges for consular fees, insurance, and inland freight from Berlin to Hamburg, and adding thereto a consumption tax of 2½ per centum and a further addition of 6½ per centum to make foreign market value.   The local appraiser fixed the dutiable value at 38.20 gold marks per 100 kilograms, and disallowed the claimed deduction for inland freight.   On an appeal to a single general appraiser, one witness was called, S. B. Behrens, vice president of the importer, who testified simply that he had purchased the goods

[1] T. D. 41454.

by correspondence and had paid the invoice price.   In addition, a special report from a customs representative was offered and received in evidence, which report will be more particualrly referred to hereinafter.   The general appraiser thereupon fixed the dutiable value at the entered value.   On application for a review, the Board of General Appraisers affirmed the judgment of the single general appraiser, and the Government brings the cause here, on appeal.

There is but one question involved, namely: Was the inland freight charge from Berlin to Hamburg a dutiable item?   The court below has found this charge to have been properly deducted in fixing dutiable value; its findings on this subject we may review only on questions of law.   Sec. 501, Tariff Act of 1922.

The report of the customs representative appearing in the record shows that the factory of the manufacturer is located in Berlin.   The inland price of the paper made by this factory is fixed by Vereinigung Einseitig Glatt, Charlottenburg, and is for Kraft white quality wrapping paper, 37.70 marks per 100 kgs., f. o. b. destination, packing and turnover tax of 2½ per centum (from October 1, 1924, 2 per centum) included.   On brown paper, such as is imported here, the inland price is 50 pfennigs more on quantities of 10,000 kgs. or more, and 80 pfennigs more on lesser amounts.   There is no such fixed price for export and no difference in price for export between white and brown paper.   The report states:

Freight charges.—All deliveries are made inland f. o. b. Hamburg.   *   *   * Inland price always includes freight charges.   It sometimes happens that deliveries are made with freight collected on delivery, in this case, however, freight is refunded by manufacturer or deducted from bill.

Several accepted orders are included in the report.   The inland sales are to buyers in Altona, Wismar, and Hamburg, in Germany. The price, in each case, is 37.70 marks for 100 kgs. net, with 2 per centum cash discount if paid within 4 days, with 2½ per centum or 2 per centum turnover tax and packing included, and f. o. b. destination.   The export sales shown by these orders show the price to be, in each instance, $3.65 per 100 pounds, net, f. o. b. Hamburg, packing included.

The facts shown by this report are not contradicted in any particular and therefore must be accepted as correct.

Section 402, Tariff Act of 1922, provides in part:

SEC. 402. VALUE.—(a) For the purposes of this act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;   *   *   *

(b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale

quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(c) The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The proclaimed value of the German gold mark at the time of this importation, a fact of which we may take judicial notice, was $0.2382. It will therefore be observed that at $3.65 per hundred pounds, the invoice price of these goods was approximately 33.77 German gold marks per 100 kilograms. It is apparent, therefore, that in the case at bar, the dutiable value was the foreign value, as defined in subsection (b) just quoted. To ascertain this foreign value, two material questions present themselves: First, what were the principal markets of Germany at the time of exportation, and second, what was the price at that time at which such merchandise was freely offered for sale to all purchasers.

As to the first proposition: The single general appraiser found the foreign value of the goods to be the entered value, thus allowing as a deduction from dutiable value the freight from Berlin to Hamburg. To arrive at this result, it must be assumed he found Berlin to be one of the principal markets of Germany for these goods and Hamburg to not be one of them. As was said by General Appraiser Hay in T. D. 35596, 29 Treas. Dec. 66:

This finding of the appraiser is equivalent to determining the market value at the point from whence the merchandise was shipped to this country—that is, it is equivalent to a finding that that was one of the principal markets of that country. * * * Any item of expense incident to placing the merchandise upon the market, therefore, which occurred before the time of arrival at the place at which the market value was found by the appraiser becomes, as such, a part of the market value of the merchandise.

To the same effect are T. D. 23851, 5 Treas. Dec. 537; T. D. 27671, 12 Treas. Dec. 419; T. D. 33832, 25 Treas. Dec. 344; *Stairs* v. *Peaslee,* 18 How. 527.

It is extremely questionable whether there is any evidence at all in the record which sustains such a finding. The mere fact that the factory may be in Berlin and that all orders are there received and filled does not, in itself, furnish that satisfactory quality of evidence which a court should have to justify a finding such as

the single general appraiser made in this case. By reference to the cases hereinbefore cited, it will be noted that courts have had frequent occasion to observe that the principal markets of a country are often at places apart from the factory, or place of production.

But assuming that Berlin was one of the principal markets of Germany at the time of export and that Hamburg was not, it became necessary for the appraiser, under the law, to find the price at which the goods imported were freely offered for sale at that time, in Berlin. When so found, that was the foreign value. The record shows plainly what this price was. It was 38.20 gold marks per 100 kgs., delivered. Whether the goods were delivered at Wismar, or Hamburg, or in Berlin itself, the price was 38.20 gold marks. Evidently the expenses of delivery, including freight, were estimated, distributed, and incorporated in the sales price and thus it resulted that the purchaser having goods delivered in Berlin upon which there were no freight charges, contributed to the expense of delivering similar goods to the customer at Wismar or Hamburg. It is a matter of common knowledge that much the same system is practiced by many of our mercantile retailing establishments in this country. But whether the goods are delivered at the expense of the seller or carried away by the purchaser, without expense, the price is the same.

Under former statutes, inland freights from the principal market to port of embarkation have been allowed as deductions to fix market value. *United States* v. *Philips Co.*, 7 Ct. Cust. Appls. 497 (501); *Benkard* v. *Schell*, 3 Fed. Cas. 193 (197); *Grinnell* v. *Lawrence*, 11 Fed. Cas. 54; *Hutton* v. *Schell*, 12 Fed. Cas. 1095; *Gibb* v. *Washington*, 10 Fed. Cas. 288; *Vaccari* v. *Maxwell*, 28 Fed. Cas. 862. But where such inland freights were deducted, it was always for the purpose of arriving at the true foreign market value of the goods, which was assumed to be the price at which they could be bought at the principal market, less the expense of moving them out of the country. In the case at bar, however, if inland freight be allowed, the importer is given a dutiable value for his goods which is less than the price at which they can be bought, on the open market, in Berlin. Such a result, manifestly, was not in the mind of Congress when it enacted subsection (b) of section 402.

We are of opinion the court below erred in arriving at the conclusion it did in affirming the judgment of the single general appraiser, and that there is no substantial evidence in the record which sustains its said findings. The dutiable value of the goods should have been fixed at their foreign value, namely, 38.20 gold marks per 100 kgs. as found by the appraiser.

The judgment of the court below is reversed and the cause remanded for proceedings in conformity with this opinion.

*Reversed* and *remanded*.