UNITED STATES v. AMERICAN IMPORT CO.

No. 5642.—Invoices dated Nagasaki, Japan, April 24, 1939, and May 29, 1939.
Certified April 27, 1939, and May 29, 1939.
Entered at San Francisco, Calif., May 26, 1939, and June 29, 1939.
Entry Nos. 11158 and 12172.

Third Division, Appellate Term

(Decided May 22, 1942)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*Laurence & Tuttle* (*Charles F. Lawrence* and *George R. Tuttle* of counsel) for the appellee.

Before CLINE, KEEFE and EKWALL, Judges

CLINE, Judge: This is an application for review of the decision of the trial court in *American Import Co.* v. *United States*, Reap. Dec. 5470. The only question involved is whether a charge for freight from Moji, Japan, to Kobe, Japan, should be added to the invoice prices of the merchandise.

Two appeals were consolidated for trial. Both cover shipments of bamboo rakes by Inouye Bussan Co. of Moji, Japan, in April and May, 1939. In making entry the importer added to the invoice prices to meet advances made by the appraiser in a test case the sum of 49.28 yen on the entry covered by reappraisement 132760–A for freight from Moji to Kobe, and 107.96 yen on the entry covered by reappraisement 132762–A.

The plaintiff below called Mr. Lawrence M. Dickson, the president of the importing company, who testified that he has been buying and selling goods in the oriental lines since 1930. He produced samples representative of the bamboo rakes herein involved which were admitted in evidence and marked illustrative exhibits 1, 2, 3, 4, and 5. He testified that his firm had been buying rakes like those exhibits for 40 years; that they paid the prices shown on these invoices, including the charge for packing and shipping, and the consular fee; that he was in Japan in 1936 or 1937 and again in 1940; that he contacted various manufacturers and made investigation as to the market conditions in bamboo rakes in both Moji and Kobe; that rakes like all of the exhibits were being sold in Moji; that there was only one rake sold in Kobe which was like any of the exhibits, that one rake being similar to illustrative exhibit 5; that he purchased rakes in Moji and they were shipped directly to the United States; that sometimes rakes purchased in Moji have been shipped via Kobe; and that "it all depends whether there happens to be a steamer at that time" in Moji.

Counsel for the importer stated at the trial that he had another witness, a Mr. Greenberg, who was in Japan in 1939 and that, as Mr. Greenberg was in Los Angeles at the time of trial, he desired to transfer the case to Los Angeles to take his testimony. After some discussion it was stipulated between counsel that if Mr. Greenberg were called he would testify that he was in Moji and Kobe in the spring of 1939 and that his testimony would be the same as that given by the witness Dickson.

The next witness called by counsel for the importer was Mr. A. H. Schrupp. He testified that he is the customs examiner who passed the merchandise covered by the two appeals in this case; that the appraised values covered by both appeals were the unit prices stated on the invoices plus packing and the amount added on entry by the importer; and that the amounts 49.48 yen and 197.96 yen, added by the importer on entry, consist of a charge for inland freight from Moji to Kobe.

Counsel for the Government offered in evidence four reports of Treasury Attaché Martin G. Scott. Counsel for the importer objected to their receipt on the ground that they were too remote from the time of exportation of the merchandise in this case and that there was nothing in the reports to indicate that they described merchandise of the same kind as that covered by the shipments herein involved. The reports were admitted in evidence and marked exhibits 6, 7, 8, and 9, exception being granted counsel for the importer.

Exhibit 6 is a report (K37–259) dated December 16, 1937. It relates to an investigation at the office of Moji Chikuzai Kaisha, at Moji, on October 15, 1937, in regard to an importation made by Trans-Oriental Traders, Inc., of New York, shipped on July 23, 1937;

that the same shipper made a second shipment on a Nagasaki consular invoice certified on July 23, 1937; that the Treasury attaché was of opinion that the charge for ocean freight to the Atlantic and Gulf ports in the United States was excessive due to an incorrect measurement of the bales; that Moji Chikuzai Kaisha sell to various customers; that usually the firm does not keep bamboo rakes in stock but manufactures the goods on receipt of an order, but occasionally, when the factory is not busy, merchandise may be made up in anticipation of orders; that Moji Chikuzai Kaisha do not manufacture the merchandise for sale in the domestic market; that the articles are offered for sale f. o. b. Moji prices to Trans-Oriental Traders, Inc., and c. i. f. prices to other customers in the United States; that the difference in the c. i. f. prices to the Pacific and the Atlantic coasts of the United States is simply the difference in ocean freight charges. The Treasury attaché listed a number of offers covering different kinds of rakes and stated that "the above offers are the only evidence of f. o. b. market value in Moji." It is also stated in the report that Moji Chikuzai Kaisha is the only firm handling the merchandise in Moji, but in a later report (exhibit 9) the Treasury attaché states that the business of Tsuchiya Bussan Co. is located in what was formerly known as Dairi, but the city limits of Moji had been enlarged to include Dairi, which change was unknown to him at the time of his first report. There is nothing in exhibit 6 concerning a charge for freight between Moji and Kobe.

The investigations of shipments from Moji, in exhibits 7, 8, and 9, were based on correspondence only. The Treasury attaché reported in exhibit 9 that Moji is in the fortified zone and he was advised that it would be preferable if he did not visit the district.

Exhibit 7 covers the Treasury attaché's report (K38–169), dated June 28, 1938; exhibit 8 covers his report (K38–179), dated July 18, 1938; and exhibit 9 covers his report (K38–218), dated October 4, 1938. In each of these reports it is stated that Kobe is the principal market for bamboo rakes in Japan. The reasons for arriving at that conclusion are set forth in exhibit 9, as follows:

For export, whether to the United States or other foreign countries, this merchandise is at all times freely offered for sale in Kobe. Sales in the Kobe market are regular and continuous.

In Moji, including Dairi as a part thereof, we find the Tsuchiya Company selling only to the American Import Company. There is no evidence whatever that they have ever freely offered this merchandise for sale in Moji.

The Moji Chikuzai have only sold this merchandise to customers in the United States on a c. i. f. basis. They have offered the merchandise for sale to Kobe exporters and shippers on an f. o. b. Moji or Kobe basis, but our Report K37–259 shows no business resulted from such offers.

There are no buyers for this merchandise in Moji proper, as there are in Kobe. It is noted that H. B. Van Brunt to whom an f. o. b. Moji offer was made is a

Kobe firm. From our investigations, we find little evidence that this merchandise has ever been freely offered for sale, in the ordinary course of trade, in the Moji market. For this reason we have reported Kobe to be the principal market.

In exhibit 7 it is reported that the American Import Co. was the only customer of Tsuchiya Bussan Co. of Moji up to the date of that report, which was June 23, 1938, but in exhibit 8 it is reported that the firm "is permitted to sell to other customers but does not." Nothing appears in any of the reports regarding shipments by Inouye Bussan Co. of Moji which is the shipper of the merchandise in this case. It may be that it is the same firm as Tsuchiya Bussan Co., but no evidence regarding it appears in the record.

In exhibit 7 the Treasury attaché names five firms in Kobe which sell or manufacture bamboo rakes for export to the United States, namely, J. Witkowski & Co., Ltd., Oishi Seichikusho, Fujii & Co., Daishin Kyokai, and Kobe Bamboo Refining Co. It also appears that Oishi Seichikusho is known as Nippon Chikuren Kaisha but all business with the local firm was through Oisha Shoten which freely offered the merchandise for sale to all purchasers. It also appears that none of these firms sold rakes for local consumption in Japan; that there is a domestic market but it is taken care of by other small dealers, usually located in rural districts where the making of rakes is a household industry. In a letter of Tsuchiya Bussan Co., attached to exhibit 7, it is stated that "We have not a domestic market here on account of cheap bamboo rakes supplied from local farmers to the retail dealer."

There appears to be nothing in any of these reports regarding freight charges from Moji to Kobe. The following excerpt from a letter from Moji Chikuzai Kaisha, attached to exhibit 9, relates to shipping charges:

Our sellers of bamboo rakes or makers thereof are located at Beppu, and our buying contract is based on ex our lighters (or our agent's lighters) at Beppu harbor.

All our purchased goods are transported from Beppu to Moji, about 100 miles, along the east coast of Kyushu Island by a lighter, which is brought direct alongside an ocean going vessel to be put on board. Therefore, once such lighter arrives at Moji, there is no other charge incurred except customs passing commission. The actual shipping charges cover (1) lighterage from Beppu to Moji and (2) customs passing commission, the total of which items is listed in our consular invoices as the shipping charges.

The invoice covered by reappraisement 132760–A contains the statement "to be shipped per s. s. 'Rakuyo Maru' sailed on 22/4/1939 from Moji to San Francisco, Calif. U. S. A." and the bill of lading attached to the invoice shows that the merchandise was shipped on the *Rakuyo Maru* by Inouye Bussan Co. in or off the port of Mozi, bound for San Francisco. Similar statements are made on the invoice and bill of lading attached to reappraisement 132762–A, the

only difference being that "Tatuno Maru," the date of shipment "24/5/39," and the word "Mozi" appear as the name of the exporting vessel, the date of shipment, and the shipping point on both the invoice and the bill of lading. Apparently "Moji" and "Mozi" are different spellings of the name of the same port. There is nothing in either invoice which tends to show that the merchandise ever entered Kobe or to support the following statement in appellant's brief:

> The importer, apparently, bought his goods at Moji although he paid the transportation charges to Kobe. The importer, in this case, paid more than the unit *per se* invoice price of the goods. This presumably, was to get the merchandise to Kobe, from which point the merchandise was shipped for exportation to the United States.

The president of the importing company testified that one rake he had seen for sale in Kobe was like that represented by exhibit 5 but the other rakes covered by the shipment were not on sale there. Exhibit 5 represents the fourth item on the invoice covered by reappraisement 132762–A which is invoiced as "bamboo rakes, 33 teeth, galvanized wire bound" at 0.0875 yen each, plus packing. The Treasury attaché stated in exhibit 7 that rakes like Tsuchiya's item H (Wisteria bound, wire fastened) were sold on May 26, 1938, to Nippon Bussan of Los Angeles at $4.15 per hundred pieces, c. i. f. With respect to the price of this sale, the Treasury attaché stated:

> This price was predicated on an f. o. b. price of Y8.80 per 100 pieces. It was explained that in April, due to higher cost of materials, the firm advanced their prices. The new price to Witkowski on this rake would be $4.00. Witkowski was given a cheaper price than the Nippon Bussan, it was explained, as they were older customers, and not because of larger quantities ordered.

There is a difference of 0.0005 yen between that sale and the instant sale to American Import Co. but it may be due to the fact that the sale to Nippon Bussan was more than a year prior to the sale of the instant merchandise. The Treasury attaché states that the cost of materials in April was higher and the new price to Witkowski would be $4 which is lower than that sale to Nippon Bussan. At any rate the evidence of that sale does not show that the price 0.0875 yen on the invoice in this case is below the Kobe value at the date of exportation of the merchandise in this case.

The court below found that Moji was one of the principal markets in Japan for bamboo rakes and that Kobe was another principal market and held that the export value of the merchandise would not include the addition for freight from Moji to Kobe. The entered values of the goods, less the charges for freight added on the entries, were held to be the export values or the dutiable values of the merchandise.

The sole question for decision is whether or not the trial court erred in finding that Moji was a principal market in Japan for bam-

boo rakes, and, although Kobe was another principal market, whether the estimated freight charges from Moji to Kobe, which were never paid, should be added to the invoice values of the merchandise to make the estimated export value at Kobe.

The appellant cites *United States* v. *Michele Diagonale*, 22 C. C. P. A. 517, T. D. 47497, as a controlling authority, but the issue in that case was different from that in the case herein involved. In that case there was but one manufacturer who sold filigree silver at Campo Ligure, Italy, and he enumerated only two sales he had made besides the one to the brother of the importer and those sales were at different prices. It appears that there were a number of dealers in the same merchandise at Genoa and that they formed an association which fixed the price at which such goods could be sold. The question involved related to whether or not the market in Genoa was controlled and the court held that it was not and that the prices at which the merchandise was sold in Genoa represented the foreign value of the goods.

In the instant case there is no evidence tending to show that four of the five different bamboo rakes in issue were offered for sale in Kobe, and, as to the one which was sold in both markets, the prices were approximately the same.

The appellant cites also *United States* v. *Zellerbach Paper Co.*, 28 C. C. P. A. 303, C. A. D. 159. The sellers in that case were manufacturers who quoted prices of matrix board delivered anywhere in Germany, the charge for the freight being included in the price. The court held that in such case the place of the principal market was immaterial and that the charge for freight from the place of manufacture to the ocean shipping ports—Hamburg and Bremen—should not be deducted from the sales price of the goods. The places of manufacture were located at three different points in Germany. The decision in that case is not applicable to the facts shown in the instant case. In discussing the subject of principal market, the court said:

* * * The evidence of record relating to sales of merchandise like that involved here in Germany for home consumption shows that such sales were all made at the places of manufacture, and, in the absence of proof to the contrary, we think it must be assumed that the principal markets in Germany for merchandise like that involved here, the sale of which was controlled by a trade association or cartel, were at the places of manufacture. * * *

The finding of the trial judge that Moji is a principal market in Japan for bamboo rakes is fully supported by the evidence which shows that there were two firms in Moji selling that commodity, and possibly three at the time of shipment if the shippers Inouye Bussan Co. and Tsuchiya Bussan Co. are separate firms. The Treasury attaché did not mention Inouye Bussan Co. in his reports, the last of which is dated 6 months prior to the first shipment in this case. The

president of the importing company testified that his firm has been buying bamboo rakes in Moji for the last 40 years and the Treasury attaché reported that the firm of Moji Chikuzai Kaisha of Moji has sold to various customers in the United States and made offers to firms in Kobe. Such evidence is sufficient to show that there was a market in Moji. The Treasury attaché reported that Tsuchiya Bussan Co. has sold only to the importer in this case but was free to sell to other firms, which tends to show that the importer was not the sole agent of that firm.

The Treasury attaché reported that five different firms were either manufacturing or selling bamboo rakes in Kobe up to the time of his investigation but some of those firms were doing very little business. The report containing that information (exhibit 7) was dated June 23, 1938. There is nothing in the reports tending to show where the principal market was in April and May, 1939, which are the dates of the shipments of the merchandise herein involved. The evidence indicates that Mr. Greenberg of the importing firm visited Moji in 1939 for the purpose of buying rakes and found a market there. The fact that there were five firms selling bamboo rakes in Kobe and two, or possibly three, in Moji does not prove that Moji is not a principal market, especially in view of the fact that four out of the five qualities covered by these importations were not on sale in Kobe.

As the trial court found, as stated above, that there were two principal markets for the goods in Japan (Moji and Kobe), that finding brings the case within the rule announced in *United States* v. *C. V. Vance (International Milling Co.) et al.*, 72 Treas. Dec. 1011, Reap. Dec. 4081, where it appeared that there were six principal markets in Canada for frozen wheat, namely Winnipeg, Moose Jaw, Calgary, Edmonton, Saskatoon, and Vancouver. The merchandise in that case was shipped from the vicinity of Edmonton directly across the Canadian border to Portal and Northgate, N. D. The Government contended that, as Winnipeg was the largest principal market in Canada, an addition for freight from Edmonton to Winnipeg should be added to the Edmonton value of the wheat but the court held that such addition would be improper. The court said:

Section 402 of the act of 1930 provides that the foreign value and the export value is the price at which such or similar merchandise is freely offered for sale to all purchasers in the principal *markets* of the country from which exported. It is therefore contemplated by the statute that there may be more than one principal market. This construction was recognized in the case of *United States* v. *Heffernan Paper Co.*, 13 Ct. Cust. Appls. 593, T. D. 41454, cited by appellant in his brief. As the statute itself contemplates more than one market, the contention of appellant that the values at Winnipeg should be held to be controlling, since Winnipeg is the largest principal market, is without merit.

In harmony with the principles announced in that case, we are of opinion that the estimated charges for freight between Moji and Kobe

should not be added to the invoice values of the bamboo rakes in this case, inasmuch as the merchandise was exported directly from Moji to the United States and did not pass through Kobe and was not sold in Kobe. We find that the weight of evidence shows the following facts:

1. The only issue involved in this case is whether the estimated charges for freight between Moji and Kobe, Japan, should be added to the invoice value of the bamboo rakes covered by the shipments herein.

2. The merchandise was exported directly from Moji to the United States and was not routed through Kobe.

3. Bamboo rakes have been offered and sold in Moji in the ordinary course of trade for many years and Moji is one of the principal markets for such goods in Japan.

4. There was no foreign value for such or similar merchandise at the time of the shipments herein involved.

5. The export values of the merchandise covered by these shipments were the invoice values together with the charges for packing.

We hold as a matter of law that export value is the proper basis of appraisement and that such value is the entered value of the merchandise in this case less any amounts added by the importer on entry to meet advances made by the appraiser in similar cases pending on appeal.

The decision below is affirmed. Judgment will be rendered accordingly.