PAUL A. STRAUB & CO., INC. v. UNITED STATES

No. 8047.—Entered at New York, N. Y.
Entry No. 703804.

(Decided September 12, 1951)

*Fred Bennett; John D. Rode,* associate counsel; for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

JOHNSON, Judge: This reappraisement involves only one question, that is, whether or not the inland freight from the principal market for decorated chinaware ornaments, which was included in the unit price of the merchandise, forms a part of the value of the merchandise for duty purposes.

At the trial the record consisted solely of an oral stipulation of agreement between counsel for both sides of the facts involved, as follows:

(1) That on or about the time of exportation herein such or similar merchandise was freely offered for sale to all purchasers in Selb-Stadt, Germany, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States including the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at the F. O. B. Bremen prices appearing upon the invoice, which included an item of "RM 91.80 costs for freight Selb-Stadt f. o. b. Bremen."

(2) That the merchandise was appraised on the basis of export value; concededly the proper basis for appraisement.

(3) That there was no foreign value for such or similar merchandise at or about the time of exportation here involved.

(4) That the only issue is whether the above item invoiced as freight forms part of the statutory export value.

(5) That if the above amount included as inland freight forms no part of the statutory export value of the goods, then the entered value represents the correct export value.

(6) That if the above amount included as inland freight forms part of the statutory value of the goods, then the appraised value represents the correct export value.

(7) That on or about the time of exportation herein, the factory at Selb-Stadt was the principal market in Germany for such or similar merchandise.

(8) That on or about the time of exportation herein, all sales and offers for sale of such or similar merchandise were made at Selb-Stadt, Germany on an F. O. B. Bremen basis and resales [sic] or offers for sale were made on an at factory basis.

It will be noted that paragraph 8 of the stipulation refers to "resales or offers for sale" made on an at-factory basis. From argument of counsel it is clear that the word "resales" was misquoted in the oral stipulation, in the first place, because it is meaningless, and in the second place, because the two words "no sales" were shown by counsel to have been intended.

Counsel for the plaintiff contends that the item of freight from Selb to Bremen forms no part of the dutiable value of the merchandise because it is a charge arising after the goods left the principal market and were destined for shipment to the United States.

Counsel for the Government contends that the item of freight is a part of the dutiable value, and it makes no difference whether the sales are for home consumption or for export. It is argued that there is nothing to show that the merchandise was ever sold f. o. b. factory or f. o. b. Selb, and that when the goods are only sold and offered for sale f. o. b. Bremen, the seaport, such sales are equivalent to sales made f. o. b. destination, where such freight charges have been held to be dutiable.

After a careful consideration of the briefs of counsel and a review of all of the cases cited by both sides, I am convinced that the item of freight to Bremen is not a dutiable charge. Contrary to the interpretation placed upon the stipulation of parties by counsel for the Government that "This merchandise could only be obtained at one price, anywhere in Germany, whether it be the principal market or any other place in Germany," the facts are that the goods could be obtained only at the market place, the principal market, Selb, and that there was no foreign value for the merchandise. The goods were sold for export only. Counsel for the Government appear to base their insistence that the inland freight is part of the value on the argument that these goods were not sold for delivery in the principal market, and, therefore, unless the goods were shown to have been sold upon that basis or upon the basis of the cost of the goods plus the freight charges to seaport, the inland freight is a dutiable item and that in all cases where the goods have been sold f. o. b. seaport or c. i. f. destination in the United States there was a choice of prices.

In Reap. Circ. 32977, certain Swiss cheese was invoiced at a uniform unit price of 360 francs per 100 kilos f. o. b. Basle, Switzerland, the port of exportation. This f. o. b. price included in the unit value the freight from the principal market or place of production. The appraiser added back the inland freight as invoiced. There, also, the only question was whether the item of inland freight was a part of the export value. The court, in allowing the deduction, stated:

In ascertaining the foreign market value of imported merchandise it has long been the rule to allow as a nondutiable item any inland freight on the merchandise from the principal market or place of production to other points or places for exportation to the United States.

In the case of United States v. A. L. Tuska Son & Co., Inc., 1 Cust. Ct. 767, Reap. Dec. 4468, involving merchandise manufactured in Osaka, Japan, the inland freight was deducted on entry, which was disallowed by the appraiser. There, also, the Government contended that the freight should not have been deducted as it was a dutiable charge. The trial court found that the inland freight was properly deductible. Upon appeal, the court held that Osaka was a principal market for the goods, "and upon such finding we hold as matter of law that the item of inland freight is properly deductible * * *."

In United States v. American Import Co., 8 Cust. Ct. 737, Reap. Dec. 5642, the question was whether or not a charge for inland freight from Moji, Japan, to Kobe, Japan, should be added to the invoice prices as a dutiable charge. The lower court found that Moji was one of the principal markets in Japan for the merchandise and that Kobe was another principal market and, therefore, that the export value of the merchandise would not include the addition for freight from Moji to Kobe. It appeared in this case that the goods were shipped directly for export from Moji and had never been sent to Kobe, but the appraiser, finding Kobe a principal market, had advanced the goods in previous cases by adding the freight to Kobe, and the importer in making entry in that case had added the freight on entry to meet such advances of the appraiser. The court cited the case of United States v. C. V. Vance (International Milling Co.) et al., 72 Treas. Dec. 1011, Reap. Dec. 4081, where there was more than one principal market. The Government there contended that the largest market should be taken as the principal market and that freight from Edmonton, Canada, one of the principal markets, to Winnipeg, Canada, the largest market, should be included as a dutiable charge. The court, finding that Edmonton was also a principal market, held that the freight should not be included in the dutiable value. Following the principle in that case, it was held in the American Import Co. case that the price at which bamboo rakes were offered and sold in Moji as one of the principal markets for such goods, should prevail as the market value and the addition of freight to Kobe was erroneously made.

In *American Import Co.* v. *United States*, 11 Cust. Ct. 419, Reap: Dec. 5933, rakes from Moji also were involved. There, the invoices were consulated in Kobe and Nagasaki. It was held, however, that inasmuch as Moji was a principal market, the value without the addition of freight to Kobe or to Nagasaki was the proper value of the merchandise.

In Reap. Circ. 35660, the question concerned an item of inland freight. The court found that the sale was made in each case from the factory and not at Hamburg, Germany, the port of shipment. The invoices included the freight paid to transport the merchandise to Hamburg. The special agent, whose report was placed in evidence, stated that there was no fixed export price at the factory; that all sales were made franco Hamburg, and, in order to establish a price at the factory, it would be necessary to take the franco Hamburg price and deduct therefrom the freight from the factory to Hamburg, and the packing charges. The court stated: "As against that statement there is the testimony of the secretary-treasurer for the importing company. He said that the orders for the merchandise were all placed at the factory and not at Hamburg." The decision below, holding the inland freight as nondutiable, was affirmed.

In Reap. Circ. 34334, the question involved the freight charges from the place of manufacture and purchase to the port of shipment, and the so-called handling charges. The court found that Carcossone and Apt, France, were the markets for the goods and that the charges were incurred after the goods had left the market places, which were the places of purchase, and held that such charges did not form any part of the market or dutiable value, and that the dutiable value of the merchandise was the invoice value less the cost of such charges wherever same was included in the values.

In the case of *S. C. Lyons* v. *United States*, 47 Treas. Dec. 492, T. D. 40843, G. A. 8986, the only controversy arose in connection with the item of freight from the factory to Hamburg. It was urged that the merchandise was sold for delivery f. o. b. Hamburg. The contention of the Government there was that the merchandise was sold for delivery franco (f. o. b.) Hamburg and the evidence indicated that all export sales were made for delivery franco Hamburg. The court, in holding the inland freight to be nondutiable, stated:

A market is a place where merchandise is sold, as distinguished from a place where merchandise is delivered. Sales create a market and are essential to its existence. Deliveries at any given place do not create a market. * * *

In this case we find that the merchandise was shipped from the factory, located at Bischofswerda, Germany; that Bischofswerda is one of the principal markets of Germany; that *the invoiced unit prices included freight paid to Hamburg, Germany, and consular fee paid*; that the amount of freight paid upon the merchandise was 702.90 gold marks; and that the market values were the same as the invoiced values less freight to Hamburg. We find, further, that there was no foreign value

and that the invoiced price less freight to Hamburg was the export value. [Italics supplied.]

The Government appealed the foregoing case to the Court of Customs Appeals, now the United States Court of Customs and Patent Appeals. See *United States* v. *Lyons*, 13 Ct. Cust. Appls. 639, T. D. 41484, where the decision of this court was affirmed.

The following cases upon which the Government relies are clearly distinguished from the situation now confronting the court. In the case of *United States* v. *Heffernan Paper Co.*, 13 Ct. Cust. Appls. 593, T. D. 41454, the merchandise was freely offered for sale and sold in the home market as well as for export. It was always sold f. o. b. destination. The court held that if in Berlin, Germany, the principal market, the merchandise is always sold for home consumption at a price including inland freight to destination, then when sold for export, if the inland freight were deducted, the export price would be lower than the foreign value. Therefore, the higher foreign value of the exported merchandise would have to prevail, that is, a value including as dutiable the f. o. b. charges whatever the destination would be in Germany. The court observed that although inland freights from the principal market to the port of embarkation have been allowed as deductions, it has always been the purpose to arrive at the true foreign value of the goods, which was assumed to be the price at which they could be bought at the principal market, less the expense of moving them out of the country, but if the inland freight be allowed as a non-dutiable item, as in the situation there before the court, where the goods were always sold at a delivered price in the German market, the importer would be given a dutiable value for his goods which is less than the price at which the goods can be bought on the open market in Berlin for home consumption.

In *United States* v. *Traders Paper Co. et al.*, 14 Ct. Cust. Appls. 293, T. D. 41909, the goods, consisting of certain paper, were sold at the same price delivered anywhere in Germany. The German inland freight was held to be a part of the foreign value. The question arising there was whether there was an inland market for exported merchandise and whether the invoice price was the home market value, when such invoice price did not include the inland freight. There was no question but that Berlin was the principal market. Although no paper was actually sold f. o. b. at the factory, it was shown to have always been sold f. o. b. place of destination at the same price regardless of the amount of freight. The only price for inland sales was the price for delivery at the place of destination, and it was the same price no matter how far from the market the delivery was made in Germany.

In the case of *United States* v. *Zellerbach Paper Co.*, 28 C. C. P. A. (Customs) 303, C. A. D. 159, the manufacturers quoted prices for

certain matrix board delivered anywhere in Germany, the charge for the freight being included in the price. The court held in such a case the place of the principal market was immaterial and that the charge for freight from the place of manufacture to the ocean shipping ports, Hamburg and Bremen, should not be deducted from the sales price of the goods. The court stated:

It would seem to follow that every purchaser in Germany, no matter where he was located would, in buying the same quantity of a given thickness of matrix board, pay out exactly the same amount of money, based on the unit price. If the merchandise were shipped to him freight collect, the invoice rendered him by the seller would show a deduction for the amount of the freight, and the purchaser would thus be paying part of the total amount (based on the unit price) to the seller, and the remainder of it to the carrier. If the freight were prepaid, then the purchaser would remit the total amount (based on the same unit price) to the seller, the net result to the latter being that he would receive an amount (based on the unit price) diminished by the amount of the freight he had prepaid. For the same quantity of like merchandise, then, sold to two different purchasers, at different distances from the factory, the manufacturer would receive two different *net* amounts. The *gross* amount expended in each instance would be the same, as each purchaser would pay out the same sum of money for a like quantity of similar merchandise. [Italics quoted.]

Each of the above cases involved merchandise which was sold in the home market as well as for export. The prices charged for the goods by the manufacturer included the freight charges to the destination, whether or not the destination was near the place of manufacture. The delivered price, therefore, was the price at which the merchandise was freely sold. If then, it was sold for export at a price, less the inland freight charges to seaport, such export price would be lower than the foreign market. No such situation confronts the court in this case. Here, the merchandise was not sold in the home market. It was only sold for export in the principal market, Selb. The price at that place included the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States from such market place. However, besides including such statutory charges, the price also included charges for inland freight to Bremen of RM 91.80. In the circumstances here presented, such charges are clearly nondutiable and should not be included in the dutiable value of the goods.

The court has carefully noted all of the arguments advanced in the brief of Government counsel. To answer same in detail would unduly extend this decision. For the reasons stated, I hold that the proper values of the merchandise for export to the United States are the invoice values, net packed, less charges for inland freight to Bremen of RM 91.80.

Judgment will be entered accordingly.