The judgment of the United States Customs Court, for the reasons stated, is *affirmed*.

UNITED STATES *v*. PAUL A. STRAUB & CO., INC. (No. 4778)[1]

United States Court of Customs and Patent Appeals, February 3, 1954

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

*John D. Rode* for appellee.

[Oral argument December 8, 1953, by Mr. Auster and Mr. Rode]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

COLE, Judge, delivered the opinion of the court:

The United States has appealed from the judgment of the United States Customs Court, First Division, in a reappraisement proceeding in which it was held that inland freight costs from the principal market, Selb-Stadt, Germany to the port of exportation, Bremen, Germany did not form any part of the export value of the merchandise

[1] C. A. D. 553.

involved therein. *United States* v. *Paul A. Straub & Co., Inc.*, 30 Cust. Ct. 620, A. R. D. 20. In so concluding, the appellate division affirmed the decision of the trial court. *Paul A. Straub & Co., Inc.* v. *United States*, 27 Cust. Ct. 442, Reap. Dec. 8047.

The merchandise in question, a quantity of decorated china ornaments, was invoiced at various unit prices, the total invoice price including a sum for inland freight between Selb-Stadt and Bremen. Entry was made in the United States at the invoice unit values less the inland freight, but appraisement was made at the invoice units of value, net packed, f. o. b. Bremen.

All facts pertinent to the controversy have been stipulated between counsel. That stipulation reads as follows:

(1) That on or about the time of exportation herein such or similar merchandise was freely offered for sale to all purchasers in Selb-Stadt, Germany, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States including the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at the F. O. B. Bremen prices appearing upon the invoice, which included an item of "RM 91.80 costs for freight Selb-Stadt f. o. b. Bremen."

(2) That the merchandise was appraised on the basis of export value; concededly the proper basis for appraisement.

(3) That there was no foreign value for such or similar merchandise at or about the time of exportation here involved.

(4) That the only issue is whether the above item invoiced as freight forms part of the statutory export value.

(5) That if the above amount included as inland freight forms no part of the statutory export value of the goods, then the entered value represents the correct export value.

(6) That if the above amount included as inland freight forms part of the statutory value of the goods, then the appraised value represents the correct export value.

(7) That on or about the time of exportation herein, the factory at Selb-Stadt was the principal market in Germany for such or similar merchandise.

(8) That on or about the time of exportation herein, all sales and offers for sale of such or similar merchandise were made at Selb-Stadt, Germany on an F. O. B. Bremen basis and no sales or offers for sale were made on an at factory basis.

In the light of the foregoing stipulated facts of record, we are called upon to review the judgment of the Appellate Division of the United States Customs Court and determine whether there was any substantial evidence upon which that tribunal could properly conclude, as a matter of law, that the inland freight costs between the stated points was a non-dutiable item in computing statutory export value.

Export value, admittedly the correct basis for appraisement, is defined in section 402 (d) of the Tariff Act of 1930 [19 U. S. C. sec. 1402 (d)] as follows:

(d) Export value—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the

United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It is entirely clear from the terms of the stipulation that all sales or offers for sale were made at Selb-Stadt, the factory and principal market, on an f. o. b. Bremen basis. It is equally clear that no sales or offers for sale were ever made on an ex factory basis so that the freely offered price for such or similar merchandise in the principal market was the f. o. b. Bremen price and that price only. In other words, all sales or offers for sale were made for delivery at the port of exportation and no sales or offers for sale were made for delivery in Selb-Stadt. Availability of the merchandise to all purchasers was thus predicated on a single price and that price included freight costs between Selb-Stadt and the port of exportation, Bremen.

Upon these facts, the appellant maintains that as there was no choice of prices the f. o. b. Bremen price represents the statutory export value of the goods. In this respect, the appellant takes the position that the cases of United States v. Heffernan Paper Co., 13 Ct. Cust. Appls. 593, T. D. 41454; United States v. Traders Paper Co., 14 Ct. Cust. Appls. 293, T. D. 41909; and United States v. Zellerbach Paper Co., 28 C. C. P. A. (Customs) 303, C. A. D. 159, are conclusively controlling of the situation found herein.

The appellate division stated that "The general rule with respect to costs, charges, or expenses in connection with the valuation of merchandise on the basis of export value * * * is that any of these which accrue upon merchandise subsequent to the time when it is in the principal market, in condition, packed ready for shipment to the United States, are not part of the export value."

The official invoice papers disclose that the charge for freight was included in the unit prices, and as the appellant aptly observes, "there is no showing of record of separate unit prices for the goods and separate unit freight charges per unit of merchandise." The appellant continues by referring to section 500 (a) (1) of the Tariff Act of 1930 [19 U. S. C. sec. 1500 (a) (1)] wherein it is stated that merchandise is subject to appraisement "in the unit of quantity in which the merchandise is usually bought and sold * * *." Repeatedly emphasizing that "the goods were only freely offered for sale to all purchasers in Selb-Stadt in the usual wholesale quantities and in the ordinary course of trade at the f.o.b. Bremen prices appearing upon the invoice, which included an item of freight," the appellant feels that the appraiser's finding of value was correct and should not have been disturbed.

In its review of the trial court's opinion, the Appellate Division of the Customs Court said:

The value found by the court below, in essence, represents a price for the merchandise *before* shipment to Bremen, i. e., a price for the merchandise when located in the principal market, packed ready for shipment to the United States, but not yet shipped out of Selb-Stadt. * * * [Italics quoted.]

\* \* \* \* \* \* \*

* * * Ordinarily, the charges in question are of such nature that they would not accrue until the merchandise was shipped from the principal market, unless there was some special agreement to the contrary, which does not appear in the record. Certainly, there would be no presumption that such charges would accrue before delivery at the port of exportation, and on the record here made we can come to no other conclusion than that the charges arose after the goods left the principal market.

In discussing the *Heffernan Paper, Traders Paper,* and *Zellerbach Paper* cases, *supra,* relied upon by the appellant, the court stated:

* * * In each of those cases, it appeared that the merchandise involved was freely offered for sale for home consumption in the country of exportation at a uniform delivered price, regardless of destination in that country. Thus, whether one bought for delivery in the principal markets or in the remotest parts of the country, the price was the same. It was held that no deduction for inland freight from the principal market to the port of exportation could be allowed as there was no difference in the price at which the merchandise was offered delivered in either place.

The court thereafter proceeded at some length to distinguish the above cases, both in law and fact, from the instant case. It is our opinion that those cases are not so distinguishable, and further that there was no substantial evidence of record to warrant the court's conclusion that the inland freight charge was a non-dutiable item in computing the statutory export value of the merchandise.

In the first place, we are unable to find any supporting evidence for the view expressed by the Customs Court that it was "clear that delivery f.o.b. Bremen was not a condition of the offer of the merchandise, but was a matter of convenience of the parties and had no other significance." This attempt to distinguish the form of the offer from its substance lacks factual foundation and is entirely too speculative in conclusion for us to support. By the same reasoning, the court's further holding that "such an offer was the equivalent of an offer at the factory, plus the freight and f.o.b. costs" is contrary to the terms of the stipulation, and is not justifiably considered to be "the substance and necessary implication of the offer." This reasoning by the court below ignores the undisputably established fact that, insofar as it appears from the record, there was but one price to all purchasers in the principal market and that price included inland freight, not just in some transactions, but in each and every sale or offer for sale.

The appellant willingly concedes that if the merchandise in the instant case could have been purchased in the principal market of Selb-Stadt for an amount less than that at which it could have been procured at Bremen, the port of exportation, the inland freight charges would not have been dutiable. Not being so purchasable, however, the appellant, as aforesaid, places reliance upon the *Heffernan*, *Traders*, and *Zellerbach Paper* cases, *supra*.

In the first of those cases this court was concerned with the statutory foreign value of a quantity of paper manufactured in the principal market of Berlin, Germany and imported via Hamburg, Germany to the United States. Whether or not inland freight charges from Berlin to Hamburg constituted a dutiable item was the sole question for decision therein. The following uncontradicted facts appeared in a report by a customs representative:

Freight charges.—All deliveries are made inland f.o.b. Hamburg. * * * Inland price always includes freight charges. It sometimes happens that deliveries are made with freight collected on delivery, in this case, however, freight is refunded by manufacturer or deducted from bill.

We said:

* * * assuming that Berlin was one of the principal markets of Germany at the time of export and that Hamburg was not, it became necessary for the appraiser, under the law, to find the price at which the goods imported were freely offered for sale at that time, in Berlin. When so found, that was the foreign value. The record shows plainly what this price was. It was 38.20 gold marks per 100 kgs., delivered. Whether the goods were delivered at Wismar, or Hamburg, or in Berlin itself, the price was 38.20 gold marks. Evidently the expenses of delivery, including freight, were estimated, distributed, and incorporated in the sales price and thus it resulted that the purchaser having goods delivered in Berlin upon which there were no freight charges, contributed to the expense of delivering similar goods to the customer at Wismar or Hamburg. * * * whether the goods are delivered at the expense of the seller or carried away by the purchaser, without expense, the price is the same.

While there are minor distinctions in the factual situation found in the *Heffernan* case, *supra*, to the facts existing in the instant case, such distinctions do not warrant a different conclusion. In the present case, the freely offered price was always the f.o.b. Bremen price. Likewise, in the *Heffernan* case there was but one price for the merchandise regardless of where it was delivered. In either case, to allow the item of inland freight would be tantamount to approving a dutiable value for merchandise less than the actual price at which such goods could have been purchased in the principal market.

In the *Traders Paper* case, *supra*, the issue for consideration was whether inland freight costs formed a part of the statutory foreign value of the merchandise involved therein. The principal market was determined to be Berlin, Germany and terms of sale were always f.o.b. place of destination, no merchandise being sold f.o.b. at the

factory. The same price prevailed regardless of freight costs to destination. Upon such facts, this court said: "It being clear that there was no factory price and that the only price or value which could be found from the evidence was the price asked and obtained for delivery at the place of destination, it seems to us that this should be the correct home market value**."

The *Zellerbach Paper* case, *supra*, presented a situation whereby matrix board was transported from certain manufacturing points in Germany to Hamburg or Bremen, ports of exportation in that country. The inland freight costs between such points was in question with regard to the inclusion of such costs in determining foreign value. It was there held that the price to all purchasers being the same, i. e., f.o.b. Bremen or Hamburg, that price represented the foreign value of the merchandise. In that case, the price paid by all purchasers in Germany was the delivered price, regardless of the purchaser's location, and that price, the freely offered price, was the same in all instances.

The *Heffernan, Traders,* and *Zellerbach* cases, *supra*, each related to finding the foreign value of merchandise. This fact, however, does not detract from their applicability in the instant case. Foreign value and export value differ to the extent that the former provides for sales for home consumption in the country of exportation while the latter is concerned with sales for export to the United States in the country of exportation. On the facts existing in the present case, the decisions in the cited cases and the principles of law found therein have significant application in determining the correct statutory export value of the merchandise here in question.

In the recent case of *John A. Steer & Co.* v. *United States,* 30 Cust. Ct. 504, Reap. Dec. 8196, the issue for determination was "what was the freely offered price for exportation of such or similar merchandise in the principal markets of the country of exportation, at the time of exportation." A concise summation of the well reasoned opinion in that case is found in the headnote as follows:

It being established that certain kraft paper is always freely offered for sale in the principal market of the country of exportation for exportation to the United States on a c.i.f. American port basis; that it is never available for delivery in said principal market, nor is it ever sold on an ex-factory basis; that it is always transported from a factory to a seaport for exportation; that the factories are located at various sites in the country of exportation; and that although charges for freight from factory to seaport vary with the different distances between the two, the freely offered price in the principal market remains the same, it follows that charges for inland freight are not properly deductible in determining export value, as defined in section 402 (d), Tariff Act of 1930. This is so upon the theory that to allow this item to be deducted would result in there being as many different values for customs purposes as there were variations in physical distances and cost of transportation from factory to seaport. Yet the law does not contemplate more than one price for the same merchandise at the same time in the same market.

In commenting upon the *Heffernan, Traders,* and *Zellerbach* cases, *supra,* the court in the *Steer* case, *supra,* said:

The three last-quoted cases settled conclusively the proposition that when sales are made f.o.b. point of destination, the price remaining the same, regardless of such destination within the country, and no sales are ever made ex-factory, the f.o.b. delivered price, which may or may not include actual freight charges, is the freely offered price within the meaning of the foreign value statute.

In the case before us it is a fact that the freely offered price to all purchasers for the merchandise was on an f.o.b. Bremen basis. There is no showing that the goods could be purchased at the invoice price less freight. The unit prices for the merchandise in the instant case included the inland freight charges at the time of purchase in Selb-Stadt, and as the appellant states, "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment,* and does *not accrue subsequent to the time of shipment* to the United States." [Italics quoted.]

It is our conclusion that the appellant's contentions are meritorious and for the reasons hereinbefore assigned, the decision of the United States Customs Court is *reversed.*