UNITED STATES *v*. TRADERS PAPER CO. ET AL. (No. 2774)[1]

1. APPRAISEMENT—FOREIGN VALUE, SECTION 402 (b), TARIFF ACT OF 1922—
    INLAND FREIGHT.

    Where goods were sold at the same price delivered anywhere in Germany, the German inland freight was part of the foreign value, under section 402(b), Tariff Act of 1922. *United States* v. *Heffernan Paper Co.*, 13 Ct. Cust. Appls. 593, T. D. 41454.

2. EVIDENCE—SPECULATION BY WITNESS.

    Where a witness testified that no goods were sold at the factory, his testimony, in reply to a question, that, if any were so sold, he would make a freight allowance from the price, was speculation.

United States Court of Customs Appeals, December 14, 1926.

APPEAL from Board of United States General Appraisers, Circ. Reapp. 36446.

[Reversed and remanded.]

*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *Thomas J. Canty*, special attorneys, of counsel), for the United States.
*William L. Wemple* for appellees.

---

[1] T. D. 41909.

[Oral argument October 22, 1926, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this appeal, kraft paper and wrapping paper, was imported from Germany. This appeal presents the question of determining the correct appraised value of the merchandise, which was invoiced in American currency and consisted of several different importations at several ports in the United States. In most cases the merchandise was appraised in gold *marks* per 100 kilos.

The action of the appraiser was appealed from by the importers where certain items were advanced in value. The single general appraiser, in most things, sustained the contention of the importers and allowed deductions from the appraised value of several different items which resulted in finding a value equal to the entered value. Afterwards a rehearing was granted, and in some instances the appraised value was affirmed and in other instances the entered value was held to be the proper value. In cases where the appraised value was affirmed the importers appealed to the Board of United States General Appraisers (now United States Customs Court), contending that there should have been allowed as deductions the ocean freight, insurance, commission, inland freight, etc. In cases where the entered value was sustained, the Government appealed to the Board of United States General Appraisers, contending that the single general appraiser erroneously allowed the deduction of freight, insurance, and other nondutiable charges.

The board rendered its first decision on December 21, 1925, which decision on rehearing on March 23, 1926, was modified, and which latter decision is as follows:

1. The merchandise exported had an inland market.

2. Such home market was the value stated in the invoice at date of shipment per 100 kilos.

3. That this value was net, packed.

4. That from the value thus found should be deducted cost of transportation from mill to port of exportation, all of which items are found on the invoices.

5. That on entry No. 175/1, covered by reappraisement 34672–A, where home market value is not stated on the invoice, we find the home market value as appraised.

From this judgment the Government has appealed to this court and contends that the board erred as follows:

1. In finding that there should be deducted cost of transportation from mill to port of exportation, all of which items are found on invoices.

2. In finding that inland freight does not form part of home market value.

3. In that the judgment is contrary to the facts and the law and is not supported by evidence and the weight of evidence.

4. In finding that inland freight should be deducted to make market value without any evidence to justify such finding.

5. In finding that inland freight should be deducted to make market value without any substantial evidence to sustain such findings.

Before this court the sole question is, did the Board of United States General Appraisers (now United States Customs Court) err in finding that the inland freight did not form a part of the home market value?

The evidence discloses that the sales of kraft paper and wrapping paper in Germany are controlled through a conference of the manufacturers; that when sold for consumption in Germany they are sold f. o. b. "destination in Germany;" that the paper for export is manufactured at, and shipped from, mills located advantageously for economical freight costs; that Berlin is the chief market for the paper; that the convention seat is Berlin, and that the prices are fixed there; that inland freight rates differ in accordance with the location of the mill, the rates being from 2.50 to 7.50 *marks* per 100 kilos, the fair average being 5 *marks* per 100 kilos.

Doctor Brand, the manager of the firm of W. Hartmann & Co., one of the manufacturers of the merchandise involved in this appeal, stated:

We always make deliveries from the mill located nearest the place of delivery in order to make a saving on the freight charges, but if a customer should request to be supplied from a certain mill which is located further away from his place of delivery than the nearest mill, our delivered price is the same.

All paper sold for consumption in Germany is sold f. o. b. "destination in Germany."

Doctor Brand was asked if, in view of the fact that the inland freight is included in the unit price charged for the paper, would the price for it be less when delivery is made at the factory? He replied:

If such a proposition should be presented to me I would naturally have to make a lower price than the f. o. b. point of delivery price.

Again, he was asked, "Is any of this paper actually sold f. o. b. factory?" He replied, "No." To the question "Would you be willing to make any allowance if the paper was sold and delivered at the factory?" He replied, "I would ascertain the freight rate from factory to destination and would make an allowance equal thereto from the established f. o. b. point of delivery price." At another place in the record the same Doctor Brand, in an affidavit, stated:

Deponents say further that the merchandise is sold f. o. b. destination and that allowance and reduction is made in the price for inland freight if the cost is borne by the customer.

The question before the board was, Was there an inland market for export merchandise and was the invoiced price the home market value (the invoiced price did not include the inland freight)?

The trial court below found from the evidence that there was an inland market and that the home market value was the invoiced value. This cause being an appeal in reappraisement, and since the statute limits our review in such cases to questions of law only, it seems to us that the only question before this court is, Is there any substantial evidence in the record to support the finding of the trial court? The only testimony of importance in the record touching the question is quoted above. There is no controversy about the facts that Berlin is the principal market; that no paper is actually sold f. o. b. at the factory; and that it is always sold f. o. b. place of destination at the same price regardless of the amount of freight. It being clear that there was no factory price and that the only price or value which could be found from the evidence was the price asked and obtained for delivery 'at the place of destination, it seems to us that this should be the correct home market value, and that this case is controlled absolutely by this court's decision in *United States* v. *Heffernan Paper Co.*, 13 Ct. Cust. Appls. 593, T. D. 41454, which case involved almost the same facts as the case at bar.

It is fair to say that the board rendered its decision in the case at bar before the *Heffernan* case, *supra*, was handed down.

The above-quoted part of Doctor Brand's affidavit has been pointed out as supporting the finding of the trial court.

In view of the very positive statements of Doctor Brand to the effect that no sales were made at the factory, we must interpret the above statement to mean that in the event the inland freight had been paid by the customer, that that would be deducted from the purchase price and be regarded as a part payment on the same. It is true that Doctor Brand stated that if a proposition of buying at the factory should be presented to him, he would naturally have to make a lower price than the f. o. b. point of delivery price. He also said, "I would ascertain the freight rate from factory to destination and would make an allowance equal thereto from the established f. o. b. point of delivery price." His answer is hypothetical and is based upon conditions which are shown conclusively not to have existed. He stated positively that the merchandise was not so sold.

Section 402 (b) of the Tariff Act of 1922 provides:

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade. * * *

The goods should have been appraised at the foreign value, which is defined by section 402 (b), *supra*, as "the market value or price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which ex-

ported in the usual wholesale quantities and in the ordinary course of trade." Evidence of a hypothetical market, or what a seller would do if confronted by conditions that do not exist, surely should not control over evidence of actual market conditions.

We think the inland freight was a part of the foreign value. This is the only question submitted and argued in this court. We do not think there is any substantial evidence supporting the decision of the Board of United States General Appraisers on the questions involved in this appeal, and we think that this case is controlled by the *Heffernan* case, *supra,* and the judgment of the Board of United States General Appraisers (now United States Customs Court) is reversed and the cause is remanded for further action not inconsistent with the views herein expressed.

*Reversed* and *remanded.*