592

(A. R. D. 51)

UNITED STATES *v.* S. STERN HENRY & CO.

Entry No. 23886.

Second Division, Appellate Term

(Decided December 8, 1954)

*Warren E. Burger,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the appellant.

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This is an application for review of the decision and judgment of the trial court (*S. Stern Henry & Co. v. United States,* 29 Cust. Ct. 479, Reap. Dec. 8168), which was filed under the provisions of title 28 U. S. C., section 2636 (a).

The involved merchandise consisted of 40 cases, each case containing 50 dozen mechanical toys described as "Boy on Scooter." It was exported from Yokohama, Japan, on June 29, 1948, on the steamship *Azalea City.*

The case was submitted to the trial court upon the following stipulation:

* * * that at or about the time of exportation of the merchandise herein involved, such or similar merchandise was freely offered for sale to all purchasers in Tokyo, Japan, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States, including the cost of all containers and coverings of whatever nature and all other costs, charges and expenses incident to placing the merchandise in condition packed ready for shipment to the United States at the FOB Yokohama price appearing upon the invoice of $1.44 per dozen, which price included an item of freight to shipping port $154.80. That

the merchandise was appraised on the basis of export value as defined in Sec. 402 (d) of the Tariff Act of 1930 which represents the proper basis for appraisement herein.

That at or about the time of exportation such or similar merchandise was not freely offered for sale for home consumption in Japan.

That the only issue involved is whether the amount included as freight to shipping port forms part of the statutory export value.

That if the amount included as freight to shipping port forms no part of the statutory export value of the merchandise, then the appraised value less the amount of such freight represents the statutory export value thereof.

That if the amount included as freight to shipping port forms part of the statutory export value of the merchandise then the appraised value represents the statutory export value thereof.

That at or about the time of exportation herein Tokyo was the principal market in Japan for the sale of such or similar merchandise for export to the United States.

That at or about the time of exportation herein all sales and offers for sale of such or similar merchandise were made at Tokyo on an FOB Yokohama basis and no sales or offers for sale were made on an ex-factory basis.

The trial court, after an analysis and consideration of the above stipulation and the authorities it felt were applicable, held as matter of law:

(1) That the said invoice item described as "freight to shipping port" is not an item that enters into the market value or the price for merchandise in the principal market in the country of exportation packed ready for shipment to the United States.

(2) That export value, as contemplated by section 402 (d), *supra*, for the merchandise in question is the appraised value, less the item described on the invoice as "freight to shipping port," in the amount of $154.80.

The case of *United States* v. *Paul A. Straub & Co., Inc.*, 41 C. C. P. A. (Customs) 209, C. A. D. 553, involved a question identical with that here involved, and, with minor details not here material, the facts were identical with those herein, as will be seen from the following stipulation, upon which that case was submitted:

(1) That on or about the time of exportation herein such or similar merchandise was freely offered for sale to all purchasers in Selb-Stadt, Germany, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States including the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at the F.O.B. Bremen prices appearing upon the invoice which included an item of "RM 91.80 costs for freight Selb-Stadt f.o.b. Bremen."

(2) That the merchandise was appraised on the basis of export value; concededly the proper basis for appraisement.

(3) That there was no foreign value for such or similar merchandise at or about the time of exportation here involved.

(4) That the only issue is whether the above item invoiced as freight forms part of the statutory export value.

(5) That if the above amount included as inland freight forms no part of the statutory export value of the goods, then the entered value represents the correct export value.

(6) That if the above amount included as inland freight forms part of the statutory value of the goods, then the appraised value represents the correct export value.

(7) That on or about the time of exportation herein, the factory at Selb-Stadt was the principal market in Germany for such or similar merchandise.

(8) That on or about the time of exportation herein, all sales and offers for sale of such or similar merchandise were made at Selb-Stadt, Germany on an F.O.B. Bremen basis and no sales or offers for sale were made on an at factory basis.

Based upon the foregoing stipulation, the Court of Customs and Patent Appeals reversed the decision of this court, stating in part that:

While there are minor distinctions in the factual situation found in the *Heffernan* case, *supra* [13 Ct. Cust. Appls. 593, T. D. 41454], to the facts existing in the instant case, such distinctions do not warrant a different conclusion. In the present case, the freely offered price was always the f. o. b. Bremen price. Likewise, in the *Heffernan* case there was but one price for the merchandise regardless of where it was delivered. In either case, to allow the item of inland freight would be tantamount to approving a dutiable value for merchandise less than the actual price at which such goods could have been purchased in the principal market.

In the *Traders Paper* case, *supra* [14 Ct. Cust. Appls. 293, T. D. 41909], the issue for consideration was whether inland freight costs formed a part of the statutory foreign value of the merchandise involved therein. The principal market was determined to be Berlin, Germany and terms of sale were always f. o. b. place of destination, no merchandise being sold f. o. b. at the factory. The same price prevailed regardless of freight costs to destination. Upon such facts, this court said: "It being clear that there was no factory price and that the only price or value which could be found from the evidence was the price asked and obtained for delivery at the place of destination, it seems to us that this should be the correct home market value * * *."

The *Zellerbach Paper* case, *supra* [28 C. C. P. A. (Customs) 303, C. A. D. 159], presented a situation whereby matrix board was transported from certain manufacturing points in Germany to Hamburg or Bremen, ports of exportation in that country. The inland freight costs between such points was in question with regard to the inclusion of such costs in determining foreign value. It was there held that the price to all purchasers being the same, i. e., f. o. b. Bremen or Hamburg, that price represented the foreign value of the merchandise. In that case, the price paid by all purchasers in Germany was the delivered price, regardless of the purchaser's location, and that price, the freely offered price, was the same in all instances.

The *Heffernan*, *Traders*, and *Zellerbach* cases, *supra*, each related to finding the foreign value of merchandise. This fact, however, does not detract from their applicability in the instant case. Foreign value and export value differ to the extent that the former provides for sales for home consumption in the country of exportation while the latter is concerned with sales for export to the United States in the country of exportation. On the facts existing in the present case, the decisions in the cited cases and the principles of law found therein have

significant application in determining the correct statutory export value of the merchandise here in question.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

In the case before us it is a fact that the freely offered price to all purchasers for the merchandise was on an f. o. b. Bremen basis. There is no showing that the goods could be purchased at the invoice price less freight. The unit prices for the merchandise in the instant case included the inland freight charges at the time of purchase in Selb-Stadt, and as the appellant states, "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment,* and does *not accrue subsequent to the time of shipment* to the United States." [Italics quoted.]

It is our conclusion that the appellant's contentions are meritorious and for the reasons hereinbefore assigned, the decision of the United States Customs Court is *reversed.*

Since the facts in the two cases are practically identical, we feel that the decision in the *Straub* case, *supra,* is decisive of the same question presented herein, following which we make the following findings of fact and conclusions of law:

Findings of fact:

1. That the merchandise in question consists of 2,000 dozen mechanical toys, described on the invoice as "Boy on Scooter."

2. That, at or about the date of exportation of the involved merchandise, such or similar merchandise was not freely offered for sale for home consumption in Japan.

3. That, at or about the date of exportation of the involved merchandise, such or similar merchandise was freely offered for sale in Japan for exportation to the United States.

4. That the item described on the invoice as "freight to shipping port" represents cost of freight from the principal market, Tokyo, to the port of shipment from the country of exportation.

5. That, at or about the date of exportation herein, all sales and offers for sale of such or similar merchandise were made at Tokyo, on an f. o. b. Yokohama basis, and no sales or offers for sale were made on an ex-factory basis.

Conclusions of law:

1. That, at or about the date of exportation, no foreign market for merchandise such as or similar to that here involved existed in Japan.

2. That the proper basis for appraisement for the involved merchandise is export value, as defined in section 402 (d) of the Tariff Act of 1930.

3. That the correct export value for the involved merchandise is the appraised value, which includes an item for freight from Tokyo to Yokohama.

The decision and judgment of the trial court are, therefore, reversed. Judgment will be rendered accordingly.