(Reap. Dec. 8586)

ALBERT MOTTOLA, AN INDIVIDUAL DOING BUSINESS UNDER THE NAME AND STYLE OF ATLAS SHIPPING CO. *v.* UNITED STATES

Entry No. 796706, etc.

(Decided May 24, 1956)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement of the values of badminton rackets, imported from Japan during the period between December 16, 1950, and January 4, 1955. The merchandise was appraised on the basis of export value, defined in section 402 (d) of the Tariff Act of 1930. The appraised value represented the value of the merchandise in a packed condition, f. o. b. port of exportation, which, in all cases, was Yokohama. The value claimed by the plaintiff, also on the basis of export value, is the value ex factory, packed.

The parties have agreed that the sole issue in the case is the correctness of the incorporation by the appraiser as part of the value of the goods of the so-called "inland" charges, consisting of freight from factory to port of exportation, storage, insurance, lighterage and handling charges, and petties, or similar charges, which were added on entry under so-called duress under section 503 of the said act, and that if those additions are held not to be a proper part of the value for duty purposes, then the appraised values, less the additions, are correct. Conversely, if it should be held that such additions are a proper part of the value for duty purposes, the appraised values are correct.

Preliminary to discussing the evidence offered under the foregoing narrowed issue, the writer deems it pertinent to observe that the said issue has been before this and our appellate court on prior occasions. The most recent case which was decided by our appellate court was *United States* v. *Paul A. Straub & Co., Inc.*, 41 C. C. P. A. (Customs) 209, C. A. D. 553, involving inland freight costs on merchandise exported from Germany.

In that case, it appeared that merchandise, such as or similar to that there under appraisement was, at the time of exportation, freely offered for sale to all purchasers in the principal market of Germany (which was at the factory at Selb-Stadt) in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States at only one price, i. e., f. o. b. port of exportation, which was Bremen. As the court said:

It is entirely clear from the terms of the stipulation that all sales or offers for sale were made at Selb-Stadt, the factory and principal market, on an f. o. b. Bremen basis. It is equally clear that no sales or offers for sale were ever made on an ex factory basis so that the freely offered price for such or similar merchandise in the principal market was the f. o. b. Bremen price and that price only. In

other words, all sales or offers for sale were made for delivery at the port of exportation and no sales or offers for sale were made for delivery in Selb-Stadt. Availability of the merchandise to all purchasers was thus predicated on a single price and that price included freight costs between Selb-Stadt and the port of exportation, Bremen.

The court succinctly summed up the significant fact as follows:

In the case before us it is a fact that the freely offered price to all purchasers for the merchandise was on an f. o. b. Bremen basis. *There is no showing that the goods could be purchased at the invoice price less freight.* [Italics added.]

The effort of the plaintiff in the case at bar was directed toward establishing that, at the time of exportation of the instant badminton rackets, merchandise such as or similar thereto could be purchased at the ex-factory price (i. e., invoiced and appraised price, less inland charges).

The proof in this regard consists of the affidavit of Too Uchida, who identifies himself as a representative of the Tsuruoka Export Racket Co-operative Association, the exporter of all of the merchandise here involved. During the course of his affidavit, which was received in evidence over the objection of counsel for the defendant as plaintiff's exhibit 1, Mr. Uchida says:

* * * that he is thoroughly familiar with the sales of the products of this Association, the prices at which its products were offered and sold, and the method of billing same since 1948, including sales made by the Association in the years 1950, 1951, 1952, 1953, 1954 and 1955 to Regent Sports Company of New York, N. Y. [note—the ultimate consignee herein]; that when business between the United States and Japan was resumed after the late war we quoted and sold merchandise for export to the United States on an f. o. b. Yokohama basis because governmental regulations required charges and remittances to be made this way; that the practice of offering was not changed immediately after the governmental control ceased; that during 1950 and later years we did make sales and deliveries of merchandise for export to the United States on an exfactory price basis, billing the purchasers separately for the merchandise and the extra inland charges; that this changed practice was the result of purchasers asking for prices at the factory; that in all cases where purchasers requested us to do so we complied with the requests and reduced the unit prices in an amount equivalent to the inland charges from the factory to ship; that on our invoices to Regent Sports Company during the time specified herein we separately listed correctly the various charges both in character and amount, which charges are unavoidable expenses in taking merchandise from the factory and delivering same on board ship; that all charges listed on the invoices, except packing, accrued after the merchandise was packing [sic] ready for shipment to the United States; and that the principal market place for the merchandise shipped to Regent Sports Company is now and always was Tokyo, Japan.

The writer is of the opinion that, under the narrowed issue in this case, the foregoing constitutes sufficient competent evidence to establish the correctness of the claim made by the plaintiff.

The defendant offered no evidence and its brief is devoted to an effort to demonstrate the insufficiency of the plaintiff's proof. It is

pointed out in the said brief that the merchandise here involved was actually bought on an f. o. b. Yokohama basis. This fact, admitted by plaintiff's counsel and contained in the oral testimony of a partner of the ultimate consignee, is, in the view of the writer, immaterial. The value of the instant merchandise, i. e., the merchandise under appraisement, is determined by the value at which such or similar merchandise was offered for sale under the conditions outlined in the statute. The affidavit, exhibit 1, establishes that, from 1950 to 1955, all purchasers who wished to do so could purchase the merchandise sold by the exporter at ex-factory prices. This establishes the conditions under which merchandise such as or similar to the merchandise under appraisement was offered for sale. The inference is not, as defendant suggests, that the instant importer *could not* purchase merchandise ex factory, but that it, for reasons which are not material, did not exercise the privilege of purchasing ex factory. Failure to accept the privileges included in the offer does not affect the terms of the offer.

Defendant's brief asserts that plaintiff's exhibit 1 is deficient of many elements of proof necessary to make out a *prima facie* case, among which are cited failure to establish a principal market or markets, evidence of dates of sales, or the prices at which any of the merchandise is alleged to have been sold in Japan, or that sales made f. o. b. factory were made in the ordinary course of trade and that they were not sporadic or isolated sales, or of the location of the factory.

If the plaintiff's proof were confined solely to the affidavit, exhibit 1, there would be merit to the foregoing assertions. However, this case was tried upon a very narrow issue, i. e., whether the additions made under duress in the case of the merchandise imported and entered prior to the effective date of the Customs Simplification Act of 1953, or the corresponding charges included in the entered value in the case of merchandise imported and entered on and after the said effective date, were properly part of the value for duty purposes, and upon concessions that a finding of the negative of that issue would sustain the plaintiff's contention, while a finding of the affirmative would sustain the appraised values. Implicit in the foregoing is an elimination of questions relating to free offer to all purchasers, ordinary course of trade, usual wholesale quantity, and principal markets. It has been, in effect, conceded by the defendant that if the charges were improperly added the value claimed by the plaintiff, *including the presence of all of the attending elements of value,* was correct. It could hardly be considered that a concession of correctness of value would not carry with it a concession with respect to the elements entering into that value. The value could not be the correct value unless all of the elements necessary to support it were present.

The case of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, cited by the defendant, has no application to the situation herein. The material portions of the affidavit relate to the method of doing business by the exporter and the statements made are evidentiary facts, i. e., what the exporter actually did in the offer and sale of its merchandise, which statements were given in evidence by a competent witness under a procedure sanctioned by the statute.

Defendant also cites the *Straub* case, *supra*, and the cases of *United States* v. *S. Stern Henry & Co.*, 33 Cust. Ct. 592, A. R. D. 51, and *Steer & Co.* v. *United States*, 30 Cust. Ct. 504, Reap. Dec. 8196, as analogous cases decided adversely to the claim of the plaintiff. The deficiency of proof in each of those cases, viz, that such or similar merchandise was freely offered for sale ex factory, has been supplied here.

Likewise, the cases of *United States* v. *Traders Paper Co. et al.*, 14 Ct. Cust. Appls. 293, T. D. 41909; *United States* v. *Heffernan Paper Co.*, 13 id. 593, T. D. 41454; and *United States* v. *Zellerbach Paper Co.*, 28 C. C. P. A. (Customs) 303, C. A. D. 159, cited by the defendant for the proposition that the circumstances surrounding each sale dictated whether charges are, or are not, dutiable, are not in point, inasmuch as the affidavit, exhibit 1, establishes that it was a uniform practice of the exporter from 1950 to 1955 to offer its merchandise ex factory to all who wished to purchase on that basis.

On the record presented, I find as facts:

1.   That the merchandise consisted of badminton rackets, imported from Japan between December 16, 1950, and January 4, 1955.

2.   That at the time of exportation of the merchandise under appraisement such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Japan in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States at ex-factory prices.

3.   That such ex-factory prices, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, in the case of the instant merchandise, were the appraised values, less the additions made on entry under so-called duress in the case of merchandise imported and entered prior to the effective date of the Customs Simplification Act of 1953, and the appraised values, less the corresponding charges included on entry in the case of merchandise imported and entered on and after the said effective date.

4.   That the price at which such or similar merchandise was offered for sale for home consumption was no higher.

I conclude as matters of law:

1. That the proper basis of value for the merchandise covered by the instant appeals for reappraisement is export value, as defined in section 402 (d) of the Tariff Act of 1930, and

2. That such export value in each case is as set forth in finding of fact No. 3 above.

Judgment will issue accordingly.