(Reap. Dec. 8949)

DAN BRECHNER & CO. ET AL. *v.* UNITED STATES

Entry No. 802165, etc.

(Decided July 25, 1957)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: These are appeals for reappraisement of the value of certain merchandise of various kinds exported from Japan between November 14, 1948, and September 12, 1950. All of the merchandise was entered under so-called duress under the provisions of section 503 (b) of the Tariff Act of 1930, as in force and effect at the time of importation. In two cases, reappraisements 180521–A and 184162–A, the exportations were made by the Japanese Board of Trade, sometimes referred to as Boeki Cho. In all the other cases, the invoices show that the seller was one of the following: Matsuzaki & Co.,

T. Chatani & Co., Ltd., Murai Shokai, Ltd., Murai Shokai, or Chuo Trading Co., Ltd., none of whom were manufacturers.

In each case, the invoice shows a unit price for each item, the total price for each quantity of each item, and the total invoice price for all items. Each invoice contains a statement to the effect that included in the *per se* unit price of the merchandise are certain costs, charges, and expenses, including some or all of the following: Case and packing charges, inland freight, storage, insurance premium, haulage and lighterage, and "petties." Some of the invoices also show a charge in the amount of 5 per centum of the factory price, alleged to represent a buying commission paid by the plaintiffs to certain agents in Japan. The entered value, made under duress, as hereinbefore noted, and the appraised value in each case equal invoiced f. o. b. steamship prices in Japan.

In these appeals, plaintiffs challenge the inclusion in the appraised value of the items for commission, claimed to have been paid to their agents as a buying commission, and the so-called export charges, consisting of inland freight, storage, hauling and lighterage, insurance premiums, and petties, whenever these or any of them appear on the invoices.

The only witness called at the trial was Jacob Brechner, who, with his brothers, Dan, Joseph, and Herbert Brechner, made up the plaintiff partnership, Dan Brechner & Co. Mr. Brechner testified that, prior to the war, he visited Japan every year, but that, since the war, he had been to Japan but twice, in November 1947 and October 1949. The witness stated that, upon his arrival in Japan, it was his custom to employ agents to assist him in the purchase of merchandise; that, in company with these agents, whose names are the same as those appearing as sellers on the invoices he visited various factories, at which time certain items of merchandise would be selected for purchase. According to the witness' testimony, these agents would discuss prices with the various manufacturers, and, in addition, act as interpreters in negotiating sales. It appears that, after an offer to buy merchandise was made by the buyer, the next step was to get the prices approved by the Japanese Board of Trade, herein known as Boeki Cho, and by "SCAP," which was the American agency which exercised control over prices in Japan (R. 5–7). As to the actual contracts, if any, with the manufacturers, on the basis approved by Boeki Cho and SCAP, Mr. Brechner testified he had no firsthand knowledge. It further appears, from the record, that remittances for merchandise purchased were made out to Boeki Cho until the time that agency went out of existence, and, after that, to the plaintiffs' agents direct (R. 14). Mr. Brechner's testimony further indicates that these so-called agents of the purchaser took delivery of the merchandise and caused the same

to be inspected, marked the cases, prepared the relevant invoices, and took care of the exportation of the goods.

On cross-examination, plaintiffs' witness admitted that, as a rule, the agents inspected the merchandise at the pier and not at their own plants, the agents having no facilities for making such inspections. The witness had no knowledge whether instructions were issued by the agents to the manufacturers to mark the merchandise and cases, or whether such operations were performed by the agents at the manufacturers' premises. After examining the papers covering all the appeals herein, Mr. Brechner agreed that, with two exceptions, the so-called item of 5 per centum buying commission is not shown as being included in the f. o. b. or *per se* price; that, in reappraisements 198341–A and 202970–A, there appears the statement in the papers that "The above charges and 5 per cent commission are included in the F. O. B. Kobe price" (R. 16–18), and then the witness further agreed that statements appearing thereon in the latter cases do not refer to buying commissions but to selling commissions which, he admitted, would be included in the f. o. b. price (R. 19).

Mr. Brechner testified, on cross-examination, with respect to reappraisement 198341–A, that he, himself, did not visit that particular factory, and, further, that he had no personal knowledge of the factory or its location. He agreed that the papers covering all the cases involved herein do not show the names of any factories. The witness admitted that he did not know "at what price the particular factories involved freely offered and sold this merchandise in the ordinary course of trade and in the usual wholesale quantities" (R. 21).

Respecting any contracts signed, the witness admitted that he did not place any written orders himself and that he did not sign any contracts with Boeki Cho, and, further, that he did not know between what parties the Boeki Cho contracts were signed. Mr. Brechner then stated that all of the contracts referred to in the consular invoices in each of these cases were in Japan with his agents, but that he did not have any confirmation of those contracts. While the witness testified that he had placed orders with Murai, Matsuzaki, Sassa, and Chatani, he stated that he could not find the contracts covering these transactions. He agreed, however, that the contracts in all of the involved cases provided for an f. o. b. price (R. 23). As to the alleged added "charges" here in issue, the witness testified that he did not know of his own knowledge whether any of these items "were paid by anyone in the actual amounts indicated in any of these invoices" (R. 27).

The plaintiffs' contention, in these appeals, is apparently based upon the claim that the involved merchandise could be purchased both on an ex-factory basis at the unit f. o. b. seaport prices, less the

charges, as invoiced, or in Japanese yen, in amounts not specifically disclosed in this record. However, it appears that, whether the shipper was the Japanese Board of Trade or one of the alleged agents of the purchasers, all sales for exportation of the merchandise to the United States were made in the ordinary course of trade on a unit f. o. b. seaport price in United States dollars and that no sales or offers for sale were made on any other basis or at any other prices. Specifically, there is no showing, in this record, that the goods in question could be purchased at a unit f. o. b. seaport price in United States dollars, less inland freight or other charges indicated on the invoices, and, further, the record fails to establish that the merchandise in any of these cases was offered for sale or sold and paid for at ex-factory prices.

Respecting the items of commission claimed to have been paid by the plaintiffs to certain agents as buying commissions, every invoice in the cases at bar shows either the Japanese Board of Trade or the alleged agents as sellers, and payment of the full invoiced unit price in each case for the merchandise involved was concededly made to either the Japanese Board of Trade or the other shippers. In none of the invoices here involved are the so-called commission charges separately enumerated in addition to a "first cost" or factory cost of the merchandise, but all of these invoices show that these charges are included in the *per se* unit price of the merchandise, at the f. o. b. steamer or port of exportation point. I am of opinion that the record in this case fails to establish that the items claimed as buying commissions were not part of the value of the involved merchandise.

Respecting the inclusion of inland freight and other charges in the market value of the merchandise, certain decisions of our courts are pertinent. In the case of *United States* v. *Samuel Shapiro & Co. et al.*, 65 Treas. Dec. 1650, 1655, Reap. Dec. 3268, wherein was involved a determination of export value of merchandise offered for sale in Belgium on a c. i. f. New York or Baltimore basis, the court stated:

Whether or not inland freight is included in the statutory export-market value depends in each case upon whether the goods could have been purchased for delivery at the factory at a price not including the said charges. Citing *United States* v. *Heffernan*, 13 Ct. Cust. Appls. 593, T. D. 41454; *United States* v. *Traders Paper Co.*, 14 Ct. Cust. Appls. 293, T. D. 41909; and *United States* v. *Ossola Bros.*, T. D. 44636. The record before us does not contain sufficient evidence on this point to support a finding that the inland carriage charges are nondutiable.

Chief reliance is placed by the plaintiffs herein on the case of *Robertson* v. *Bradbury*, 132 U. S. 491, 33 L. ed. 405, as controlling on the question whether so-called inland freight and other charges are part of the statutory value of the involved goods. That case arose under the Tariff Act of 1883. It appears that, for some years prior to the passage of the Tariff Act of 1883, the cost of transportation

from the principal markets to the port of exportation abroad was, by statute, included as part of the value upon which duty was to be taken. Section 7 of the act of 1883 repealed that part of the statutes so providing, making the value of the goods when located in the principal market the basis of value and specifically prohibiting the addition to the value of the goods for duty purposes of such charges as transportation from the principal market to the port of exportation. In the *Robertson* case, *supra*, the evidence, as summarized by the Supreme Court, showed that the goods involved were produced at certain mines located near Neufchatel, Switzerland, and were shipped from that point to Antwerp for exportation; that the merchandise in question consisted of "a quantity of asphaltum, 300,000 kilograms; value at the mines, 34.50 marks per 1000 kilos., M 10,350. Freight and charge from the mines to Antwerp, free on board, at 18 marks per 1000 kilos., 5400. Free on board Antwerp, marks 15,750."

The controversy in the *Robertson* case, *supra*, arose from the fact that the certified invoice on which entry was based was made out before the exporting sellers knew of the repeal of the law, requiring the inclusion of inland freight charges for duty purposes, and, as a consequence, included the price at Antwerp. Attached to the entry was an uncertified invoice, indicating the value of the goods at the mines and, in addition, the freight and charge from the mines to Antwerp. The Court, in its opinion, page 499, stated *inter alia*:

First. In regard to the construction and effect of the consular invoice which expressed the value of the goods "free on board," it was perfectly proper and right to instruct the jury that if they were satisfied from the evidence that this form of valuation was understood to include charges of transportation from the place of production to the place of shipment, and other charges of shipment and transshipment, then the levy of duties on such valuation, since the passage of the act of 1883, was contrary to law, and that the plaintiff could recover back the duties levied on the amount of such charges, provided he took the proper course to avail himself of the error. This is so evident that it needs no discussion to make it plainer.

I am, of course, in agreement with the construction which the Supreme Court, in the *Robertson* case, *supra*, placed upon the provisions of the statute, as it existed at the time of exportation of the merchandise there involved. However, the present statute differs with the law, as it existed in the cited case, and, furthermore, the facts in the cases now under consideration are clearly distinguishable from the factual situation in the *Robertson* case. In the cited case, the record showed the cost of the merchandise at the mines, the place of production, evidently the principal market, and, in addition, the charges to Antwerp, the port of exportation. In the cases at bar, however, the involved merchandise was only sold f. o. b. Japanese seaport, and there is no competent evidence in this record to establish that the goods were sold for delivery at the factory, less charges. As

a matter of record, no factory has been shown to exist, nor has the price for the goods at any factory been established. In addition, the correctness of the alleged added charges are here disputed by the Government which, apparently, was not the situation in the *Robertson* case, *supra*. It is incumbent upon an importer who appeals to reappraisement to meet every material issue involved in a case. *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276. The plaintiffs herein have failed to establish a value for these goods, other than that found by the appraiser.

Subsequent to the decision in the *Robertson* case, *supra*, the Tariff Acts of 1922 and 1930 were enacted by the Congress, which, in effect, nullified the applicability of said decision, as applied to the facts in the cases at bar. The new provisions included in the valuation sections (sections 402 (b) and (c) of the Tariff Act of 1922 and sections 402 (c) and (d) of the Tariff Act of 1930) a foreign value and an export value, which again provided for the inclusion of the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, as a part of the value thereof.

In *United States* v. *Paul A. Straub & Co., Inc.*, 41 C. C. P. A. (Customs) 209, C. A. D. 553, our appellate court held that, where a quantity of china ornaments appraised on the basis of export value, which concededly was proper, was freely offered for sale to all purchasers in the principal market of country of exportation, at time of exportation, at a single price, i. e., f. o. b. port of exportation, which price included therein an item of inland freight cost to said port, and no sales or offers for sale were ever made on an at-factory basis for delivery in the principal market, then, under such circumstances, inland freight charges were correctly included in computing statutory export value. The merchandise there in question was invoiced at various unit prices, the total invoice price including a sum for inland freight between Selb-Stadt, Germany, the principal market, and Bremen, the port of embarkation. In holding that the inland freight costs between the stated points were dutiable items, in computing statutory export value, the court, in the *Straub* case, *supra*, page 211, stated:

It is entirely clear from the terms of the stipulation that all sales or offers for sale were made at Selb-Stadt, the factory and principal market, on an f. o. b. Bremen basis. It is equally clear that no sales or offers for sale were ever made on an ex factory basis so that the freely offered price for such or similar merchandise in the principal market was the f. o. b. Bremen price and that price only. In other words, all sales or offers for sale were made for delivery at the port of exportation and no sales or offers for sale were made for delivery in Selb-Stadt. Availability of the merchandise to all purchasers was thus predicated on a single price and that price included freight costs between Selb-Stadt and the port of exportation, Bremen.

In the *Straub* case, *supra*, the appellate court, in reversing the appellate division of the Customs Court, which had upheld the action of the trial court in allowing deductions for inland freight charges, stated that the Customs Court had incorrectly distinguished the cases of *United States* v. *Heffernan Paper Co.*, 13 Ct. Cust. Appls. 593, T. D. 41454; *United States* v. *Traders Paper Co.*, 14 Ct. Cust. Appls. 293, T. D. 41909; and *United States* v. *Zellerbach Paper Co.*, 28 C. C. P. A. (Customs) 303, C. A. D. 159, in which latter cases it was held that no deduction for inland freight from the principal market to the port of exportation could be allowed. In so holding, the appellate court, in the *Straub* case, *supra*, page 212, stated:

* * * It is our opinion that those cases are not so distinguishable, and further that there was no substantial evidence of record to warrant the court's conclusion that the inland freight charge was a non-dutiable item in computing the statutory, export value of the merchandise.

In the first place, we are unable to find any supporting evidence for the view expressed by the Customs Court that it was "clear that delivery f. o. b. Bremen was not a condition of the offer of the merchandise, but was a matter of convenience of the parties and had no other significance." This attempt to distinguish the form of the offer from its substance lacks factual foundation and is entirely too speculative in conclusion for us to support. By the same reasoning, the court's further holding that "such an offer was the equivalent of an offer at the factory, plus the freight and f. o. b. costs" is contrary to the terms of the stipulation, and is not justifiably considered to be "the substance and necessary implication of the offer." This reasoning by the court below ignores the undisputably established fact that, insofar as it appears from the record, there was but one price to all purchasers in the principal market and that price included inland freight, not just in some transactions, but in each and every sale or offer for sale.

and, at page 215:

In the case before us it is a fact that the freely offered price to all purchasers for the merchandise was on an f. o. b. Bremen basis. There is no showing that the goods could be purchased at the invoice price less freight. The unit prices for the merchandise in the instant case included the inland freight charges at the time of purchase in Selb-Stadt, and as the appellant states, "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment*, and does *not accrue subsequent to the time of shipment* to the United States." [Italics quoted.]

It appears significant in our present determination, therefore, that our appellate court, in the *Straub* case, *supra*, adopted the following holding of the court in the *Traders Paper Co.* case, *supra* (14 Ct. Cust. Appls. 293, 296):

* * * It being equally clear that there was no factory price and that the only price or value which could be found from the evidence was the price asked and obtained for delivery at the place of destination, it seems to us that this should be the correct home market value * * *.

While the *Traders Paper Co.* case, *supra*, related to finding the foreign value of merchandise, this fact, as stated by our appellate court in the *Straub* case, *supra*, did not detract from its applicability to the *Straub* case, and likewise the holding in the *Traders Paper Co.* case has pertinent application to the cases at bar.

It also appears significant to observe that, in a petition for a writ of certiorari before the Supreme Court, in connection with the *Straub* case, *supra*, the attention of that Court was directed to the holding in the *Robertson* case, *supra*. The petition, however, was denied.

Counsel for the plaintiffs, in their brief, allege that the situation in the cases at bar differs from that which appeared in the *Straub* case, *supra*, asserting that, in the latter case, the goods there involved were never offered, except on an f. o. b. basis, while the merchandise covered by the appeals here in issue was offered and bought at ex-factory prices; that, in the *Straub* case, *supra*, the manufacturers received the full invoice price for the merchandise, whereas, in the present cases, the manufacturers never received any of the inland freight charges or the items claimed as buying commissions. The record before me, however, lends no support to these contentions. As heretofore indicated, the record in the cases at bar clearly indicates that the merchandise in question was not offered or sold during the involved period at other than a unit price f. o. b. seaport, and, further, there is no competent proof herein to establish that these goods were offered at ex-factory prices. With respect to payment for the involved merchandise, no manufacturer is shown to have actually sold the goods or even to have invoiced the merchandise. Every invoice covering the items in question shows either the Japanese Board of Trade or certain firms, having no factory or manufacturing connection with the merchandise, as sellers, and payment of the full invoice price in each instance for the merchandise was made to them. All of these payments represented the price for the goods which were sold and purchased on a unit *per se* f. o. b. seaport basis. It accordingly appears that, in every instance, the plaintiffs paid the amount in full, which included therein as part of the unit *per se* price of the goods the various items or charges here under consideration. The situation in the cases at bar, therefore, parallels that which obtained in the *Straub* case, *supra*, the holding in which case I deem controlling in the present determination.

Attention has been directed to the case of *Albert Mottola, an individual doing business under the name and style of Atlas Shipping Co.* v. *United States*, 38 Cust. Ct. 583, Reap. Dec. 8738, decided on January 28, 1957, wherein, on a set of facts admittedly the same as those in the *Straub* case, *supra*, the court held that certain so-called

"inland" charges, consisting of freight, etc., were deductible items in the ascertainment of export value (section 402 (d) of the Tariff Act of 1930). However, in view of the reasons heretofore expressed, I am of opinion that the views expressed by our appellate court in the *Straub* case, *supra*, are controlling in the determination of the present issue.

Upon the entire record before me, I find as facts:

1. That the involved merchandise consists of rubber balls and numerous other items, exported from Japan between November 14, 1948, and September 12, 1950;

2. That said merchandise was exclusively sold on an f. o. b. Japanese seaport basis at unit *per se* invoiced prices for export to the United States, as appraised;

3. That there is no probative evidence of record of any other price for such or similar merchandise during the period here involved.

I conclude as matters of law:

1. That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis of value for the merchandise involved herein, and

2. That such value in each case is represented by the unit *per se* invoiced price for each item, f. o. b. Japanese seaport, without deduction, as appraised.

Judgment will issue accordingly.