(Reap. Dec. 9010)

BRIDGETTS & CO., INC. (MONDIAL CO., INC.), ET AL. v. UNITED STATES

Entry No. W-46493-1/2, etc.

(Decided October 22, 1957)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: These are appeals for reappraisement of the value of canned tuna fish and crabmeat exported from Japan between February 27, 1950, and June 18, 1954. In all cases, the invoices show a unit price for each item, f. o. b. Japanese seaport, the total price for each quantity of each item, and the total invoice price for all items. The invoices in question contain a statement to the effect that inland freight and other charges enumerated therein, indicated as inland freight, cartage, insurance premium, haulage and lighterage, storage, and "Petties," are included in the invoice price.

Entry of the merchandise in those cases, exported prior to September 7, 1953, the effective date of the Customs Simplification Act of 1953, was made under so-called "duress" certificates, claiming that the inland freight and other charges were not part of the value. In the other cases of merchandise exported after the above effective date,

the importer made deductions on entry for the stated invoiced inland freight and other charges. The appraiser appraised the involved merchandise at the *per se* invoiced unit f. o. b. Japanese seaport prices.

Plaintiffs called as their only witness Henry Wasserman, associated with Mondial Co., Inc., and with Ancora Trading Corp., ultimate consignees of the merchandise here involved. Mr. Wasserman stated that he was familiar with the terms under which the involved merchandise was offered by sellers in Japan during the period in question. He testified that offers for merchandise, such as that here imported, were made orally by about six or eight sellers, most of whom had offices in New York; that these offers were either f. o. b. Japan, or cost and freight, either to east, west coast, or gulf ports in the United States; that there was a difference between the f. o. b. Japan price and the cost and freight gulf and western coast of the United States price (R. 7, 13); that where the goods were purchased cost and freight some port of the United States, there was a difference in price as between the western coast and eastern coast delivery (R. 13).

On cross-examination, Mr. Wasserman testified that if a Japanese concern quoted a cost and freight New York price, he would not have any knowledge of the cost breakdown of that quotation, but that the price would represent the landed cost in the United States. In response to questioning by the court, the witness stated that the difference in f. o. b. and cost and freight price quotations was represented by the difference in cost of transportation from the f. o. b. Japanese port of exportation.

Plaintiffs' witness further testified, with respect to the merchandise covered by reappraisement No. 216056–A herein, that the basis of sale of such goods was f. o. b. at a unit price of $5.30 per carton; that the shipment in question contained 30 cartons, the total value being shown as $161.50, representing total price, plus $2.50 consular fee; that the invoice covering this shipment states figures in United States dollars for case and packing charge, inland freight from factory to shipping port by rail, cartage by truck, insurance premium from godown to on board, hauling and lighterage, and storage. Appearing on the invoice in question is the statement "The above charges are including [*sic*] in Invoice Price." In this connection, the record discloses the following testimony, elicited on cross-examination:

X Q. So that these charges are included in the per se unit invoice price, am I correct in making that statement?—A. Yes.

X Q. You agree to that?—A. Yes.

X Q. Is that situation the same in all of the other cases?

MR. KLINGAMAN: I will admit they are. (R. 17.)

Mr. Wasserman further testified, on cross-examination, that he did not make separate payment for any of the charges under consid-

eration and that they were included in the f. o. b. price. In this connection, the witness testified:

X Q. So that any oral offer that was made was finally determined and consummated as an f. o. b. Japanese seaport price at a unit basis?

JUDGE WILSON: That is any order acted upon.

THE WITNESS: Contained in these cases; yes, sir, that is correct.

Respecting the stated amounts for the charges, as invoiced, plaintiff's witness testified that he did not know whether the invoiced amounts for the charges in question are correct, nor did he know whether they were actually paid by the shippers of the goods. The witness concluded his testimony by stating that he had no knowledge whether any of the eight sellers he had dealt with sold the same merchandise in the ordinary course of trade and in the usual wholesale quantities for home consumption, or at what prices.

In *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276, our appellate court, respecting an importer's burden in an appeal for reappraisement, stated:

The issue is not whether the value returned by the appraiser is the proper dutiable value of the merchandise, but whether there is (a) a foreign value or/and (b) an export value, and, if both, which is the higher, and the importer, having been the appealing party in the first instance, it was incumbent upon it "to meet every material issue involved in the case." * * *

The issue in these cases, therefore, is whether the importers have sustained the burden imposed upon them under the statute.

The record in the cases at bar fails to establish the existence or nonexistence of a statutory foreign value. The only evidence, in this regard, is the statement of plaintiffs' witness that he had no knowledge of such a basis of value or the prices, if any, as might be shown by the sales of the sellers with whom he dealt, respecting merchandise such as that here involved. In this respect, therefore, the plaintiffs herein have failed in their burden of proof.

Respecting export value, the testimony adduced only has to do with the price at which the importers herein purchased the merchandise, or at which said merchandise was offered to them. There is no probative proof in this record as to the price at which such or similar merchandise was freely offered for sale in the country of exportation for export to the United States to all purchasers in the ordinary course of trade, as provided for by the statute. The price paid for the involved merchandise does not establish a statutory value for the goods. *Sears, Roebuck & Co. et al.* v. *United States*, 31 C. C. P. A. (Customs) 36, 42, C. A. D. 246.

The record herein, as evidenced by the pertinent invoices and the testimony of plaintiffs' witness, together with the concession of plaintiffs' counsel, establishes that sales of the merchandise here involved, when contracted for and thereafter confirmed, were exclusively made

to the importers by all the sellers involved at *per se* unit invoiced prices f. o. b. Japanese seaport. Disposition of these appeals is controlled, in my opinion, by the holding of our appellate court in *United States* v. *Paul A. Straub & Co., Inc.,* 41 C. C. P. A. (Customs) 209, C. A. D. 543.

In the *Straub* case, *supra,* the court therein held that where a quantity of china ornaments appraised on the basis of export value, concededly proper, was freely offered for sale to all purchasers in the principal market of the country of exportation, at the time of exportation, at a single price, i. e., f. o. b. port of embarkation, which price included therein an item of inland freight cost to said port, and no sales or offers for sale were ever made on an at-factory basis for delivery in the principal market, then, in such case, inland freight charges were correctly included in computing statutory export value. In so holding, the court in the *Straub* case, *supra,* page 211, stated:

It is entirely clear from the terms of the stipulation that all sales or offers for sale were made at Selb-Stadt, the factory and principal market, on an f. o. b. Bremen basis. It is equally clear that no sales or offers for sale were ever made on an ex factory basis so that the freely offered price for such or similar merchandise in the principal market was the f. o. b. Bremen price and that price only. In other words, all sales or offers for sale were made for delivery at the port of exportation and no sales or offers for sale were made for delivery in Selb-Stadt. Availability of the merchandise to all purchasers was thus predicated on a single price and that price included freight costs between Selb-Stadt and the port of exportation, Bremen.

The court, in the *Straub* case, *supra,* page 215, further observed:

* * *, "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment,* and does *not accrue subsequent to the time of shipment* to the United States." [Italics quoted.]

In the case at bar, the record establishes that the freely offered price to the plaintiffs herein was on an f. o. b. Japanese seaport basis. There is no competent proof herein establishing values for the involved merchandise other than those at which appraised, the appraiser, in each case, adopting the *per se* unit invoiced value alone as the dutiable value of the merchandise. The presumption of correctness attaching to the appraised values, therefore, has not been overcome.

The case of *Robertson* v. *Bradbury,* 132 U. S. 491, relied upon by the plaintiffs, is not, in my opinion, controlling in the present determination, for the reasons fully set forth in *Dan Brechner & Co. et al.* v. *United States,* 39 Cust. Ct. 607, Reap. Dec. 8949, decided July 25, 1957.

Upon the record before me, I find as facts:

1. That the involved merchandise consists of canned tuna fish and crabmeat exported from Japan between February 27, 1950, and

June 18, 1954, which were exclusively sold on an f. o. b. Japanese seaport basis, at unit *per se* invoice prices, for export to the United States, as appraised.

2. There is no probative evidence of record of any other price for such or similar merchandise during the period in question, either for home consumption in Japan or for export to the United States.

I conclude as a matter of law:

1. The presumption of correctness attaching to the appraised values has not been overcome.

2. That the proper values for the involved merchandise are the values found by the appraiser, represented by the unit *per se* invoiced price for each item, f. o. b. Japanese seaport, without deductions.

Judgment will issue accordingly.